13413

ARMITAGE, ADM'X, v. SEABOARD AIR LINE RY. CO.

(164 S. E., 169)

*Messrs. Logan & Grace* and *John I. Cosgrove,* for appellant,

*Messrs. Buist & Buist,* for respondent,

May 17, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

This action, instituted in the Court of Common Pleas for Charleston County, grew out of the death of Blaine L. Mowers, occurring in a collision between an automobile operated by the deceased, and a railway train of the defendant railway company at a grade crossing. The result of the trial before his Honor, Circuit Judge Mann, was a verdict of the jury and the judgment of the Court in favor of the defendant. The appeal here is on the part of the appellant

from the adverse judgment and the refusal of the Court to grant a new trial.

The complaint contained allegations, both as to negligence and willfulness, common to suits arising out of railroad crossing accidents. The only one specially to be noticed here is that which charged that the railway company failed to properly maintain the crossing, at which the accident occurred, in accordance with the statutes of the State.

In the fourth paragraph of the complaint it was alleged that the intestate left surviving him as his sole heir at law and distributee his sister, Mrs. Armitage (also the administratrix), and that the action was brought for her benefit.

The defendant denied sufficient knowledge or information to form a belief as to the allegation regarding the beneficiary. In other respects, the answer was a general denial, with the affirmative plea of contributory negligence and willfulness on the part of the deceased, which it was alleged brought about his death.

The train involved in the collision consisted of a gas-electric engine and only two cars, and the automobile, driven by the deceased, collided with the rear car.

The testimony developed followed very much the usual line in such cases. Witnesses for the plaintiff testified that they did not hear the statutory signals, that Mowers, just preceding the accident, appeared to be driving carefully, and that the crossing was a dangerous one.

A number of witnesses for the defendant swore positively that all required signals were given, that the crossing was no more dangerous than the usual railroad crossings, and that the intestate, while driving a noisy automobile at a high rate of speed, ran into the train. The engineer and other members of the train crew said they did not see the intestate before the happening of the accident.

The intestate had resided alone for a few years on Johns Island. Apparently little was known about him in the community. Prior thereto he had been engaged for several years

in the naval service of the United States, was on the sea much of the time, and, when in this country, had lived at various places, principally in New York, New Jersey, and in the New England states. The sole evidence on the part of the plaintiff as to the beneficiary of the intestate was her own testimony that she was his only heir at law; that he was unmarried; that no brother or sister, except herself, had survived; and that the father and mother had predeceased the intestate.

The defendant offered a witness who claimed to be Mrs. Blaine L. Mowers, widow of the deceased. This witness testified that she was born Mary Hamilton, in early life married one Potter, from whom she had been divorced, that, under the name of Mary Hamilton, she was married to the deceased in 1913 in Boston, Mass., and that she had received for several years allotments from the United States government as the wife of Mowers, on account of the latter's naval service. A certified copy of a record of the marriage of Blaine L. Mowers and Mary Hamilton, issued by the Secretary of the Commonwealth of Massachusetts, under the great seal of that commonwealth, was placed in evidence. The alleged Mrs. Mowers also testified that she had known Mrs. Armitage, formerly Mrs. Lott, the sister of the intestate, for some years, and that for about three months she had lived in the home of Mrs. Armitage, then Mrs. Lott, in Rochester, N. Y., staying there during that time while her husband was at sea, engaged as a machinist mate on the U. S. S. Nebraska, and that her husband visited her on one occasion at the home of Mrs. Armitage, formerly Mrs. Lott. The defendant also offered testimony from a Mrs. Evans that she had known the intestate and the woman who claimed to be his wife, and she knew of their having lived together as husband and wife.

There was no reply or attempted reply, whatever on the part of the plaintiff to any evidence offered by the defendant. The plaintiff was present in Court and heard the testi-

mony of the woman who claimed to be the widow of the deceased. She did not take the witness stand to controvert the testimony of the alleged Mrs. Mowers to the effect that she, as the wife of the deceased, had resided in plaintiff's home.

The plaintiff's attorney, without offering any evidence in reply, and without notifying the Court that the plaintiff disputed the statements of the alleged Mrs. Mowers, announced to the Court that the plaintiff had been taken by surprise, and asked for an adjournment until the following morning that the plaintiff might make further preparation in the case. In ruling upon and refusing that request, the Court stated, in substance, that he was satisfied that the plaintiff had been in possession of sufficient facts to put her upon proper notice that the question as to who was the beneficiary of the intestate, under the statute, would arise, and that evidently she had failed to communicate her information to her attorneys.

After the announcement by the Court of the ruling on the matter of adjournment, counsel for the plaintiff moved for a mistrial in the case and a continuance because of surprise by the testimony developed regarding the relationship of the alleged widow of the deceased. Again there was complete failure on the part of the plaintiff to offer any testimony in refutation of the statement of the alleged widow as to her residence, as the wife of the deceased, in plaintiff's home. The Court overruled that motion as well as another motion on the part of the plaintiff for a voluntary nonsuit.

Stating that he did so "in order to preserve our rights," plaintiff's counsel then declined to take any further part in the case "by argument or requests to charge."

Without any further assistance on the part of counsel for plaintiff, the Court then proceeded to instruct the jury as to the law involved in the case. In submitting the issues, the trial Judge directed the jury to find not only a general verdict, but by special verdicts to answer two questions. The first question submitted was this: "Was Blanche L. Armi-

tage the sole surviving heir of the deceased Blaine L. Mowers at the time of his death?" The other question was as follows: "Under the evidence in this case and under the charge which I have given you (not taking into consideration any question as to whether the deceased Blaine L. Mowers had a lawful living wife at the time of his death) is the defendant corporation liable ·in damages by reason of the death of Blaine L. Mowers?" Both questions were answered by the jury in the negative, and the general verdict was in favor of the defendant.

Immediately upon the publication of the verdict and the special findings of the jury, plaintiff made a motion for a new trial upon the minutes of the Court, which was marked "heard," and that motion, with the grounds of the same and supporting affidavits in connection therewith, was heard some time afterwards by the trial Judge at chambers.

It seems to us unnecessary to set out verbatim the nine grounds of the motion for a new trial. Some of them may be grouped. The first group related to the rulings of the Court in declining to grant the requested adjournment, the refusal to order a mistrial, and the declination to allow the plaintiff to take a voluntary nonsuit, all these for the reason that the plaintiff had been taken by surprise at the evidence offered by the defendant as to the intestate being survived by a widow. The second group attempted to raise the issue that the testimony of the alleged widow was false on a material fact in the case, that after-discovered evidence so showed, and, if the plaintiff had been in position to offer at the trial evidence she had later secured, the result would have been probably a verdict in her favor. On the motion, it was claimed, too, that the special verdict of the jury finding the plaintiff not to be the beneficiary under the statute was contrary to the weight of the evidence. In the motion, it was also urged that the Circuit Judge had committed error in submitting the special verdicts to the jury, and in withdrawing from their consideration the specification of negligence

that the crossing was not maintained by the defendant in accordance with the statutes of the State.

After having considered very carefully, as it is quite apparent, all the grounds of the motion, the trial Judge refused to grant a new trial, setting forth in his order very clearly his reasons therefor. It will not be necessary to report the order in full, but we shall refer hereafter to some of the holdings.

There are fifteen exceptions to this Court, and some of these have subdivisions. In appellant's argument, these are grouped into nine questions. We shall reduce them further and consider only those we regard as being pertinent to a proper decision of the case in this Court, and shall follow our own, rather than the appellant's order in which the questions have been stated.

The appellant complains that the Circuit Judge erred in withdrawing from the consideration of the jury the specification of negligence to the effect that the railway company had failed and omitted to maintain properly the crossing, at which the accident occurred, in accordance with the statutes in such cases made and provided. Regarding that alleged act of negligence, the Court told the jury "inasmuch as there has been no testimony that the condition of the roadbed at that place in any way contributed to the death of Mr. Mowers, you will not consider that last specification." In the order on the motion for a new trial, referring to his former action in this regard, Judge Mann said, under the testimony of the witnesses as to the accident, "it would have been impossible for a reasonable juror to have found that the condition of the crossing contributed in any way to the occurrence of the accident."

We have not been cited by appellant's counsel to the statute they have in mind, which it is claimed the respondent failed to observe. Section 4986, Civil Code of 1922 (Section 8433, Code of 1932), as to guarding rails of a railroad by plank, timber, or otherwise, cannot be applicable, since

that section refers only to railroad crossings within the corporate limits of a city, town, or village, and the crossing involved in this case was not within a municipality. The general law in force at the time of the accident did not embrace the Act March 18, 1931 (37 St. at Large, p. 152) (now Section 8448, 1932 Code), since that enactment was passed after the accident occurred. We suppose counsel have reference to the general law regarding the duty of railroads to keep and maintain their crossings in safe condition for the passage of travelers, some of which was incorporated in the Civil Code of 1922 as Sections 2925, 4926, and 4927 (Sections 5832, 8378, and 8379, 1932 Code). The cited sections, as well as some others not necessary to be referred to, look to the proper maintenance and upkeep of railroad crossings, so as to safeguard "the lives of persons" and "the protection of property." Certain county and township officials are thereby required to see that the crossings are properly maintained, and to notify interested railroad companies of any failure to properly keep up a crossing. There is absolutely no evidence here of any failure on the part of the respondent to comply with any order of any competent authority as to the crossing in question.

The appellant contends that, by some evidence she presented, she showed that there was too much sand in and about the crossing, and, on that account, her intestate was not able soon enough to stop his automobile. We agree with the Circuit Judge that there was no testimony to show that the sand, even if there was more than the ordinary accumulation of it about the crossing, was in any way the proximate cause of the accident. The evidence conclusively showed that Mowers, driving at a very good rate of speed, to say the least of it, when he realized he was about to drive his automobile into the moving train, swerved his car for the purpose of trying to miss the train, and that his automobile struck the rear step of the last coach.

In considering the question which we have been discussing, and our remarks may refer also to, other questions, we may say that, if counsel for appellant had continued to take part in the trial of the cause, if there was any evidence requiring the particular specification of negligence to have been submitted to the jury, it would have been the duty of counsel, in all fairness to the Court, to have pointed out that evidence. This could have been done certainly in argument to the jury. When counsel saw fit to withdraw from participation in the trial, it resulted in failing to give the Court the assistance which the Court is always entitled to have from counsel.

It is urged that the trial Judge erred in restricting the appellant's right of recovery only to the acts of negligence alleged against the respondent, and that thereby he took away from the jury the issues of willfulness raised by the pleadings and evidence. Evidently the question here raised refers to the charge to the jury, for at no time was there any announced ruling by the Court that the appellant was not entitled to recover for willfulness. Perhaps the charge was not very full as to willfulness, but we think, under all the circumstances of the case, enough was said by the Judge in his charge to the jury along that line. He told them explicitly that the delicts charged against the railway company were not only alleged by the appellant to be negligent acts, but that she also alleged that they were willful and wanton. In several instances he referred to willfulness, and pointed out the distinction between that and simple negligence. He expressly charged the jury that they could assess punitive damages against the respondent for willfulness or wantonness on its part. In the absence of any specific request for further or fuller instructions, we think the charge, as given by the Judge, complied with the law.

It is contended by the appellant that there was reversible error in the manner in which the special issues were submitted to the jury and the instructions

given with their submission. It appears clearly that appellant concedes the right and authority of the trial Judge to submit special issues. See Section 602, 1932 Code (Section 542, 1922 Code Civ. Proc.), as to the authority of the Court to direct the jury to find special verdicts. See, also, *Joiner v. BeVier*, 155 S. C., 340, 152 S. E., 652, and cases there cited. In passing upon this question on the motion for a new trial, the trial Judge disposed of it, for the reasons stated in his own language, as follows:

"At the trial of this case, there developed two totally distinct and separate issues, neither of which had any particular relationship to the other. The first question was whether Blanche L. Armitage was the statutory beneficiary of Blaine L. Mowers. The second question was whether there was legal liability on the defendant by reason of the death of Blaine L. Mowers.

"It appeared to the Court that in order to do justice to both parties and to avoid unnecessary and protracted litigation, the Court should be informed of the jury's interpretation of the facts on each of these questions.

"If the questions had not been separated, a general verdict for the plaintiff would certainly have involved further litigation between Mrs. Armitage and Mrs. Mowers, while a general verdict for the defendant would have left the Court in ignorance as to whether the jury had reached that conclusion by reason of its determination of the first question or the second question or both.

"I, therefore, of my own motion determined to submit to the jury two special issues. The jury found the answer of 'no' to each of these issues. The general issue was then submitted to the jury and the jury found for the defendant.

"The separation of the issues, moreover, would have allowed the Court to impound the amount of the verdict in event that a verdict was found against the defendant and that the jury had answered the first question against Mrs.

Armitage. The finding of the jury was such that this action became unnecessary."

We thoroughly agree with the manner in which the issues were submitted to the jury, and the reasoning of the Circuit Judge, as expressed in his order, is convincing that he did right. The Court does not approve numerous actions regarding the same matter. For three days the jury in this case had been listening to evidence as to the liability of the railway company for the death of the deceased. There was no necessity, if the railway company was not liable for that death, under the law, to try over again that particular issue. To have tried it again would have resulted probably in a similar finding on the part of the jury, the County of Charleston would have been put to great expense, and the parties likewise put to considerable expense and trouble. The final instructions of the Judge in submitting the issues were clear. He had no assistance on the part of appellant or her counsel as to the manner of submitting the issues.

Several of the "questions involved," as presented by the appellant, relate to the refusal of the Court to allow a voluntary nonsuit, to order a mistrial, to continue the case, and to permit an adjournment. In support of the position that in all of those matters there was error, there has been cited the recent case of *American Trust Co. v. Bloom et al.,* 148 S. C., 386, 146 S. E., 249. It was ruled by this Court in that case, quoting the syllabus: "Plaintiff's counsel held to have right to move for voluntary nonsuit at any time before rendition of verdict, unless defendant would have been deprived of some right thereby."

There can be no question about the correctness of the rule as announced in the *Bloom case,* when it is understood in connection therewith that the right to take a voluntary nonsuit, and all other matters looking to the continuance or discontinuance of a case, are within the discretion of the presiding Judge. In the *Bloom case,* the plaintiff sued on

notes, the execution and delivery of which were admitted by the defendant, who pleaded payment in very general terms. The plaintiff introduced the notes sued on with some evidence that they had not been paid. The defendant introduced in evidence a certificate of the cashier of the bank showing that other notes had been substituted for the notes sued on. The plaintiff asked for a voluntary nonsuit, but the Judge ordered a directed verdict in favor of the defendant. Later the trial Judge granted a new trial on the ground that the plaintiff had been taken by surprise, and the appeal to this Court was only from that order granting a new trial. In sustaining the lower Court, this Court held that the plea of the defendant was really one of novation and not one of payment. It was shown, too, without doubt, that the defendant really owed the plaintiff on notes, either the ones sued on, or substituted notes, the amount claimed by the plaintiff to be due to it from the defendant. The only question before this Court was really the one as to the "abuse of discretion" of the Circuit Judge in granting the new trial, and his order was sustained.

The Court in the *Bloom case* recognized that the right of a plaintiff, after trial has commenced, to discontinue the action, was addressed to the sound discretion of the presiding Judge, and cited in support of that principle *Michalson v. Roundtree,* 51 S. C., 405, 29 S. E., 66. There was an approval in the *Bloom case* of the holding in the *Michalson case* that, on the question of surprise at the introduction of evidence, the weight and sufficiency were exclusively for the trial Judge. The *Bloom case* is in harmony with that of *Bell v. Clinton Oil Mill,* 129 S. C., 242, 124 S. E., 7, where it was declared that a motion of the plaintiff, after commencement of trial, to discontinue the action, was addressed to the sound discretion of the trial Judge.

In the case at bar, the trial Judge held, in effect, in his rulings on the motions under consideration, and on the motion for a new trial, that the appellant had

not been taken by surprise at the introduction of the evidence of the alleged widow. In view of the failure of the appellant to take the witness stand and deny the statement of the alleged widow that she had lived in appellant's home as the wife of the brother of the appellant, we cannot say that the Circuit Judge abused the discretion allowed him under the law. The absolute silence of the appellant, after the evidence of the alleged widow had been presented, if that evidence was untrue, was not the fair way for her to treat the Court. It has often been said by this Court that a party may not quietly sit by, failing and refusing to speak, when knowing of vices in a trial, and later, because of such vices, seek relief therefrom. It seems quite significant, too, as pointed out by Judge Mann in his order on the motion for a new trial, that the appellant, in her affidavit in support of that motion, did not even at that time directly controvert the testimony of the alleged Mrs. Mowers as to the appellant having former information as to the relationship of husband and wife between her brother and the woman who claimed to be his widow.

Appellant complains that the trial Court erred in admitting in evidence the exemplified copy of the record of marriage of Blaine L. Mowers and Mary E. Hamilton in the State of Massachusetts. In introducing this record, the respondent presented the certificate of his excellency, Frank G. Allen, Governor of the Commonwealth of Massachusetts, under the great seal of the commonwealth, to the effect that F. W. Cook was the Secretary of the Commonwealth of Massachusetts, and the Secretary of the Commonwealth, under his official seal, certified as to the correctness of the copy of the record, and that he was the lawful custodian of the original of such record. The record was clearly admissible under the provisions of Section 740, Code of Civil Procedure of 1922 (Section 725, 1932 Code), and 28 U. S. C. A., § 688.

The last matter to be noticed is the complaint on the part of the appellant that the trial Court erred and abused its discretion in refusing the motion for a new trial. The question raised here is, in many respects, a résumé of all the other matters which we have heretofore discussed, and what we have said has really disposed of it. In his order on that motion, the trial Judge approved the finding of the jury, as stated in its special verdict, that there was no liability on the respondent on account of the death of Mowers. After hearing all the evidence in the case, the jury completely absolved the railway company, and its agents and servants, from all responsibility. We have examined the evidence carefully, and we certainly cannot say that the verdict of the jury, on the question of the respondent's liability, was wrong. There was much testimony by many witnesses to show that all the required statutory signals for the crossing were given; that the crossing was no more dangerous than any ordinary railroad crossing; that the view was clear; that the train was running at its ordinary and usual rate of speed, on schedule; and that the unfortunate deceased, who was well acquainted with the location of the crossing, driving his automobile at a rapid rate of speed, ran into the train. The main testimony in opposition to the stated facts, as related by the witnesses, was on the part of a few witnesses who testified they did not hear the crossing signals given. The question of the negligence of the respondent was fairly and squarely submitted to the jury, and those twelve men, sworn to render a fair and impartial verdict, decided there was no such negligence. Under the evidence as given, it seems to us that, in all probability, another jury would render a similar verdict, regardless for whose benefit the action was brought. Even when it appears that there has been error in the trial of a cause, this Court is not disposed to reverse the judgment below, unless it is shown that the error was prejudicial, and that the result of the trial, on account of that error, may have been different. A careful ex-

amination of the record in this case has not disclosed any legal error, and certainly no error which would have influenced the jury in finding that the respondent was responsible, under the law, for the death of the deceased.

The judgment of this Court is that all the exceptions be overruled, and the judgment of the lower Court be, and the same is hereby, affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.