7066

STATE OF SOUTH CAROLINA v. SOUTHERN RY. CO.

1. UNDER 24 STAT., 665, THE ATTORNEY-GENERAL has the right to discontinue this proceeding.

2. DISCONTINUANCE—DISCRETION.—The rule formerly applied in equity cases, that a cause could only be discontinued after issue joined within discretion of trial Judge, when discontinuance would not work prejudice to the defendant applies to law cases. Here the Judge committed error in granting the motion of discontinuance on ground that Attorney-General had the right to do so without considering the reasons presented by defendant against continuance.

Before KLUGH, J., Richland, December, 1907. Reversed.

Action by State of South Carolina against Southern Railway Company, Asheville and Spartanburg Railroad Company, South Carolina and Georgia Railroad Company, Carolina Midland Railway Company, South Carolina and Georgia Railroad Extension Company, and Southern Railway—Carolina Division. From Circuit order discontinuing case, defendants appeal.

*Messrs. B. L. Abney, A. T. Smythe* and *D. S. Henderson,* for appellants, cite: *State entitled to no special favors:* 1 S. C., 72; 3 S. C., 167; 22 S. C., 74. *Order is discretionary with the Court:* 2 McC., ch. 419; Chev. Eq., 95; 1 Rich. Eq., 294; 2 Strob. Eq., 210; 11 S. C., 547; 37 S. C., 122; 65 S. C., 200; 109 U. S., 713; 1 Ohio St., 170; 71 U. S., 145; 4 Fed. R., 101; 15 Eng., ch. 247; 44 Fed. R., 604; 49 Fed. R., 87; 55 Fed. R., 572; 118 Fed. R., 818; 171 Mass., 452; 51 S. C., 416. *Attorney-General had no authority to make motion:* 1 Dis., 469; 8 S. C., 231; 5 Abb. Pr., 444. *Attorney-General is estopped from discontinuing this case by his stipulations:* 20 Ency. P. & P., 607; 6 S. C., 31; 11 S. C., 544; 28 S. C., 73; 98 N. Y., 453; 143 N. Y., 61; 77 Fed. R., 388; 4 F. R., 101.

*Attorney-General J. Fraser Lyon* and *Messrs. Bellinger & Welch,* contra.

*Messrs. Bellinger & Welch* cite: *This is action at law:* 2 S. C., 86; 18 S. C., 232; High on Ex. Leg. R., secs. 591-622; 23 Ency., 601, 639; 104 Mass., 239; Code 1902, 1790; 428, 434; 2 Johns., ch. 370; 1 Tred., 177; 64 Mo., 464; 5 Kans., 213; 26 Ark., 281; 2 Brev., 32; 6 Enc. P. & P., 837; 80 S. C., 74. *Plaintiff had right to discontinue even if the suit is in equity:* 6 Ency. P. & P., 833; 2 McC. Eq., 421; 1 Rich. Eq., 294; 65 S. C., 501; 4 Cyc., 936-7; 15 S. E., 960.

November 24, 1908.  The opinion of the Court was delivered by

MR. JUSTICE WOODS.  The defendants appeal from an order granting leave to the Attorney-General to discontinue this action instituted in behalf of the State, as directed by the Act of the General Assembly of 22d February, 1904 (24 Stat., 665).  The questions to be decided are: First, did the statute under which the action was brought require the Attorney-General to carry the pending cause forward to a final determination of the issues?  Second, did the Circuit Judge have the power in his discretion to refuse the motion to discontinue?  Third, did the Circuit Judge fail to exercise his discretion and grant the order on the ground that the Attorney-General had the absolute right to discontinue beyond the control of the Court?

The first question presents small difficulty.  The Attorney-General, it is true, is under a strong mandate of the General Assembly, expressed in the Act of 1904, to use all reasonable dispatch in bringing the issues referred to in that Act to judicial decision.  But the statute gives him entire freedom as to the precise nature of the action he shall bring.  Certainly there is nothing in the statute indicating a purpose to prevent his discontinuing an action improperly brought, or to restrict in any manner his full control of the conduct of the litigation.  Nothing but the most explicit legislative expression should induce the Court to hold that it was the intention of the General Assembly to embarrass the Attorney-General by denying to him the power and responsibility of conducting the litigation according to his judgment.  The power to move to discontinue the pending action and to institute another not being denied in the act is to be implied as an incident of the general control of the litigation contemplated.

The second question is one of legal principle, not dependent on the facts of the case.  The rule has been long estab-

lished by a number of cases that motions to discontinue in equity causes are addressed to the discretion of the Court, and will be refused when a discontinuance would work prejudice to the defendant. *Bethia* v. *McKay,* Chev. Eq., 93; *Muldrow* v. *DuBose,* 2 Hill Ch., 375; *Bank* v. *Rose,* 1 Rich. Eq., 292; *Aucker* v. *Levy,* 3 Strob. Eq., 210; *Adger* v. *Pringle,* 11 S. C., 547; *Latimer* v. *Sullivan,* 37 S. C., 120, 15 S. E., 798. The rule was otherwise with respect to actions at law, and the plaintiff could discontinue or take a nonsuit at his pleasure, even after notice of discount filed by the defendant. *Usher* v. *Sibley,* 2 Brev., 32; *Johnson* v. *Basquere,* 1 Speer, 329; *Branham* v. *Brown,* 1 Bail., 262. In *Bethia* v. *McKay, supra,* Chancellor Harper, for the Court, expressed dissatisfaction with this technical distinction between the practice at common law and in equity, but said it had been too long established to be disturbed. The reason for dissatisfaction with a rule that one man should be allowed to draw another into litigation and drop him out at pleasure, without a decision of the issue tendered, is much stronger now since costs have been practically abolished, and the penalty of having to pay them no longer deters plaintiffs from seeking unfair discontinuances. We think, however, the Code of Procedure adopted since the decision of the cases last cited, not only allows, but requires that the artificial distinction should be abolished, and that the rule of practice in equity making discontinuance to depend on the discretion of the Court should be applied to legal actions. Sec. 453 provides: "Generally in all matters in which there is any conflict or variance between the rules of equity and the rules of the common law, with reference to the same matter, the rules of equity shall prevail." Accordingly, in *Inman* v. *Hodges,* 80 S. C., 455, which was a legal action on an overdraft, when plaintiffs insisted on their right to discontinue, although the defendants had set up a counterclaim, the Court held the motion to be addressed to the discretion of the Court. This conclusion, that it was within the discre-

tion of the Circuit Court to grant or refuse the motion for leave to discontinue, without respect to the nature of the action, makes unnecessary consideration of the elaborately argued question whether this action should be regarded legal or equitable.

It is next to be determined, whether the record shows the Circuit Court granted leave to discontinue on the ground that it had no discretion to do otherwise. All the judicial power with which a tribunal is invested by law enters into and supports its judgments. Hence, when a Court makes an order which it was within its discretion to grant or refuse, the strong presumption is, that the power of discretion was exercised. To overcome this presumption, the record must affirmatively show that the order was granted, because of an erroneous conclusion that the Court was without discretionary power to refuse it. The order now under review was thus expressed: "This case comes before the Court on motion of the Attorney-General to withdraw his complaint herein and discontinue these proceedings. After hearing argument on both sides, it being the opinion of the Court that the Attorney-General has the right and authority to discontinue such proceedings and that an order to that effect should be granted upon payment of costs; it is

"Ordered and adjudged, That the clerk of this Court do within fifteen days tax the proper costs and disbursements in these proceedings, and that upon the payment of the plaintiff of the costs and disbursements so taxed, the plaintiff have leave to withdraw the summons and complaint and discontinue this action, without prejudice."

The order then rests on the finding "that the Attorney-General had the right and authority to discontinue such proceedings." It would be difficult to use language more strongly implying lack of power by the Court to exercise any control, and the right of the Attorney-General to discontinue as a matter of course. To remove all possibility of doubt, however, it is important to consider the history of the cause and the facts appearing in the record to ascer-

tain if there is any ground upon which the Court could have rested the order in the exercise of its discretion. The absence of any such ground would throw strong light on the language of the order, and remove any doubt that the order was granted because in the view of the Court there was no discretion to refuse it.

The two main purposes for which the action was brought on behalf of the State by Hon. U. X. Gunter, Attorney-General, a predecessor of the present Attorney-General, were, first, to have annulled the agreements for consolidation made by Asheville and Spartanburg Railroad Company, South Carolina and Georgia Railroad Extension Company, under which agreement the railroads named were, as the complaint alleges, consolidated and merged on 23d June, 1902, into one corporation, called Southern Railway—Carolina Division; and, second, to have annulled a lease executed on 30th June, 1902, by Southern Railway—Carolina Division to Southern Railway Company. Both the consolidation and lease were undertaken and carried into practical effect in strict conformity with an act of the General Assembly, passed on the 19th day of February, 1902 (23 Stat., 1152). The pivotal issue in the cause was, whether this act of the General Assembly was unconstitutional in that it contemplated the consolidation of competing railroads and a lease of the consolidated railroad to a competing railroad. The section of the Constitution involved provides: "No railroad, or other transportion company, and no telegraph or other transmitting corporation, or the lessees, purchasers or managers of any such corporation, shall consolidate the stock, property or franchise of such corporation with, or lease or purchase the works or franchises of, or in any way control, any other railroad or other transportation, telegraph or other transmitting company owning or having under its control a parallel or competing line; and the question whether railroads or other transportation, telegraph or other transmitting companies are parallel or competing lines shall, when demanded by the party

2—82

complainant, be decided by a jury as in other civil causes."
Art. IX, sec. 7.

The answers are very full, but it is only necessary to say
here that they deny that any of the railroads embraced in
the consolidation or in the lease were lines competing with
each other within the meaning of the Constitution. Upon
the decision of this issue of fact as to whether there had
been a consolidation and a lease of railroads competing with
each other, depended affairs of great moment both to the
State and to the corporations involved. The State was con-
cerned because its people had ordained that the union of
competing railroads was detrimental to their interests and
should not be allowed, and it was further concerned that
the railroads involved should be relieved of uncertainty as
to their legal status, to the end that they might have no
excuse in such uncertainty, for not rendering efficient ser-
vice at the least cost to the people of the State. The de-
fendant railroad companies were vitally concerned because
the uncertainty as to their corporate status and corporate
rights would of necessity produce doubt and distrust of
their corporate securities, and prevent the Southern Rail-
way Company, whose lease was attacked, from undertaking
development and improvement. But the importance to the
railroads concerned of a, speedy decision of the issues was
made still more urgent by the fact that numerous suits had
been instituted against them under sec. 2210 of the Civil
Code, which provides: "Any railroad company owning,
leasing or operating competing railroad lines within this
State in violation of law shall be subject to a penalty of one
hundred dollars for ever day that such competing lines are
owned, leased or operated, such penalty to be recovered in
any Court of competent jurisdiction in any county through
which either of such competing lines may pass, by any citi-
zen thereof who may sue for the same, one-half of such pen-
alty to go to the party suing therefor and the other half to
the State: *Provided,* That the provisions of this chapter
shall be without prejudice to any remedy which the State

may be entitled to in its own behalf." In view of these things, there was no room for the Court to doubt that the defendants were vitally interested in a speedy trial of the issues tendered, and would be materially prejudiced by discontinuance of the action. In deciding the motion for discontinuance, not only was the Court bound to give these interests of the defendants consideration under the general principles of law, but a very strong obligation was placed on the Circuit Court, and on this Court as well, to keep in view the rights of the defendants, by the special enactment of the General Assembly that there should be a speedy trial in the interest of the defendants as well as the State.

The Act of 1904, directing the Attorney-General to bring a test action, not only recites the precise conditions which we have set out as a reason for requiring the action to be brought forthwith, but it especially enacts: "That any and all proceedings instituted by the Attorney-General under or in pursuance of the terms of this Act, shall have precedence in any and all Courts of this State, over any and all other cases then upon the calendars of the said Courts for trial therein, and the final decision therein shall be had and rendered at the earliest practicable moment." Indeed the statute shows in almost every line, the legislative recognition of the great importance to the people and the railroads of the speedy decision of the issues, and of the legislative intention to discharge a public duty by requiring the Attorney-General to bring the test action not only in justice to the people, but also to save the railroad companies from the loss produced by the uncertainty as to their legal status and rights. Further, it conferred on both parties—the State and the railroad companies—in language which could not be misunderstood, the right to demand of each other and to ask of the Courts a trial of the issues at the earliest practicable moment. In addition to all this, the cause had so far progressed towards a decision of the important issues to which we have adverted, that counsel had entered into a stipulation that it should be tried during the year 1907. The

issues had been framed for trial; references had been held
to take testimony in Aiken, Camden, Kershaw and Orange-
burg; and the venue had been changed from the county of
Kershaw to the county of Richland.  Presumably, the de-
fendants had incurred considerable expense in these pro-
ceedings.  The motion for discontinuance was made with-
out previous notice, and when the defendants were present
with their witnesses ready for trial.  When all the peculiar
circumstances are considered, it would be difficult to state a
case showing more strongly that a discontinuance would
work hardship to defendants.

.Notwithstanding all this, there might have been good
ground for allowing the discontinuance in the exercise of
reasonable discretion, for the interest of the State as well as
the defendants was to be considered.  Indeed, the general
rule is, that the plaintiff has the right to let fall his action,
unless the defendant can show plainly that the discontin-
uance would work material injury to him.  But when the
defendant, assuming that burden, plainly shows material
injury to himself, then it is plain the plaintiff, in order to
bring into exercise the discretion of the Court, in his behalf
ought to show that some injury would result to him from
a trial of the action.  So in this case, notwithstanding the
great importance to the defendants of a speedy trial of the
cause, the Court might well have granted the motion upon a
showing that a trial of the case would be prejudicial to the
State.  But the record is entirely devoid of such showing.
On the contrary the motion seems to have been made on the
theory that the Attorney-General had an absolute right to
discontinue beyond the control of the discretion of the
Court.  We do not doubt that it ought to be assumed the
Attorney-General had some reason for the discontinuance
and that his intention was to respect the enactments of the
General Assembly, and bring the issues, referred to in the
statute, to trial in some other way.

But these reasons were not presented to the Court, nor
was there any showing that any change was desired in the

action by making new parties or inserting new allegations or raising new issues or the same issues in a different form that could not have been effected by amendment. The defendants were not bound, and still less could the Court hold itself bound by the opinions or conclusions of the Attorney-General, as to the sufficiency of his reasons. On the contrary, the question whether the reasons for the discontinuance were of force sufficient to countervail the strong grounds presented by the defendants against the discontinuance was a question for the Court to decide in the exercise of its discretion. As these reasons were not presented to the Court, the case, as it comes to this Court, is this: The plaintiff moves to discontinue without stating any reason; the defendants oppose the motion, showing beyond all doubt that the speedy decision of the issues tendered by the plaintiff is of great importance to them; that the statute under which the action was brought specially provides that they shall have a speedy decision; and that a discontinuance of the action will be seriously prejudicial to them. Not only is this proof of the defendant uncontroverted, but nothing whatever is presented to the Court tending to show that a discontinuance is essential to the protection of the interests of the State, or that its interests would suffer any detriment whatever from a trial of the issues, as made by the pleadings. This being the state of the case, there was no support for the order in the discretion of the Court. Taking this fact in connection with the language of the order, there is no escape from the conclusion that the Circuit Court did not exercise its discretion, but granted the motion on the ground that it had no power to refuse it.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, without prejudice to the right of the Attorney-General to renew the motion to discontinue, addressed to the discretion of the Circuit Court.