13386

BARR v. WITSELL *ET AL.*

(175 S. E., 436)

*Messrs Jefferies & McLeod,* for appellant,

*Messrs. Padgett & Moorer, Howell & Fishburne* and *McKendree Barr,* for respondent,

July 14, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The plaintiff brought his action against defendants upon two causes of action. The first cause set out a note made and delivered to G. C. Underhill, Frank P. Stewart, and E. B. Safford, dated November 17, 1924, in the sum of $7,000.00. The body of the note is as follows:

"$7,000.00.                Bradenton, Fla., Nov. 17, 1924.

"On or before Nov. 17th., 1929 after date we promise to pay G. C. Underhill, Frank P. Stewart and E. P. Safford or order, the sum of Seven Thousand Dollars, for value received, with interest from date at the rate of 8 per cent

per annum, interest payable semi-annually. In case the interest on this note is not paid when due it shall bear interest after maturity at the same rate as the principal of this note. This note is payable at Manatee River Bank and Trust Company, Bradenton, Fla.

"This note is one of a series of seven notes of even date, and it being expressly agreed that time is the essence of this agreement I hereby agree that if any one of said notes or interest thereon shall mature and remain unpaid for as long as 30 days after maturity, then all the remaining unpaid notes shall mature instanter, and the right of action thereto for prinicpal, accrued interest and attorneys' fees shall at once exist.

"And should it become necessary to collect this note through an attorney, either of us, whether maker, security, or endorser on this note hereby agree to pay all costs of such collection, including a reasonable attorneys' fee.

"[Signed]    J. M. WITSELL,

"C. W. PEURIFOY

"JAS. E. PEURIFOY."

It is further alleged that the said G. C. Underhill, Frank P. Stewart, and E. P. Safford for value and before maturity indorsed the said note and transferred the same to plaintiff, who is now the owner and holder thereof in due course.

It is further alleged that there is now due on the note to plaintiff the sum of $6,300.00.

The second cause of action is similar except that it sets out a note made by the defendant to Underhill, Stewart, and Safford under the same date of November 17, 1924, for the same amount, being payable on or before November 17, 1930.

The defendant J. M. Witsell filed an answer and the defendants C. W. Peurifoy and James E. Peurifoy filed a joint answer. The answer of the defendant Witsell set up nine defenses. The plaintiff demurred to the third, fourth, fifth,

sixth, seventh, eighth and ninth defenses, and, as it will be necessary to consider the nature of those defenses in considering the demurrer, they need not be set out here specifically.

The case was called for trial by his Honor Judge Mann, and a jury at the fall, 1932, term of the Court of Common Pleas for Colleton County. When the case was called for trial and the jury had been impaneled, counsel for plaintiff asked leave to take a voluntary nonsuit as to the first cause of action, and to proceed to trial on the second cause of action alone. After consideration and argument this permission was granted. Thereupon the demurrer was considered and, after elaborate argument, was sustained; his Honor later filing an order setting forth the grounds upon which he sustained the demurrer. After hearing the demurrer and argument thereon and before the statement of the Court as to his views, counsel for the defendant Witsell asked leave of the Court to amend his answer; it was then late in the afternoon and near the hour of adjournment, and the Court stated that he would allow counsel until 9:30 the next morning to submit the proposed amendments. When they were submitted the following morning they were disallowed, and the defendant Witsell appeals upon numerous exceptions, which, however, make only these questions: Was it error to permit the plaintiff to take a voluntary nonsuit on the first cause of action over the objection of the defendant? Was it error to sustain the demurrer to the third, fourth, fifth, sixth, seventh, eighth and ninth defenses? Was it error to refuse the proposed amendments to the answer of J. M. Witsell?

It appears strange that a defendant should object to a plaintiff taking a voluntary nonsuit on a cause of action, and it may be said that as a general rule a plaintiff would have that right, but it does not follow that a plaintiff always has that right; because, the taking of a nonsuit may work injury for the defendant. In this case it appears from the

record that the ground upon which plaintiff's attorneys asked for voluntary nonsuit in the first cause of action is that the note set out in the first cause of action had been pledged by plaintiff as collateral security at one of the branches of the People's State Bank of S. C.; that the bank took it and borrowed money on it; that plaintiff has no writing to show where the note is; that it has been misplaced and lost and that they are unable to regain it on account of the failure of the People's State Bank. The defendants raise the defense that plaintiff is not the owner of the note, so that plaintiff is prejudiced in proving the case before the jury. In objection to this proposition the defendants say that plaintiff had accepted a renewal of this note and that they understood that plaintiff's counsel had the original note, the one sued on, in Court. Plaintiff's counsel admitted that they did have the original note, which is the basis of the first cause of action, but they did not have the renewal, and for that reason they could not go to trial.

The Judge granted the motion, and allowed the plaintiff to take a voluntary nonsuit on the first cause of action. We think this was error. The plaintiff had sued on the note set out in detail in the first cause of action. It is admitted that he had that note in his possession in Court. If he was entitled to recover in that cause of action, he was entitled to recover on that note. The defendant Witsell had set up the plea that that note had been paid and discharged by the defendants James E. Peurifoy and C. W. Peurifoy. The last-named defendants had set up in their answer the plea that the note thus sued on in this cause of action had been paid, discharged, and satisfied by a new note given by the defendants C. W. Peurifoy and James E. Peurifoy, which, they alleged, on information and belief, was held by the Batesburg Branch of the People's State Bank, successors to the First National Bank of Batesburg. The answers of these defendants had informed plaintiff of these defenses before the trial, and no motion to amend the complaint in the first

cause of action had been made. We can readily see that the presence in Court of the renewal note was a matter of grave importance to the defendants Witsell and the Peurifoys. If they failed to produce and prove it, their defense would fail and plaintiff would be entitled to judgment on his first cause of action. It further appears that the original note sued on in the first cause of action was one of a series of seven notes growing out of the same transaction, so stated in the complaint, and it is readily understandable that it was a matter of grave importance to the defendants that the first cause of action be confined to the note set out therein because of its relation to the note set out in the second cause of action. It is the rule that the question of nonsuit is one largely within the discretion of the presiding Judge, but it is not an absolute right on the part of plaintiff.

It was held in the case of *Pee Dee River Lumber Co. v. Fountain,* 90 S. C., 122, 72 S. E., 885, quoting from syllabus 2: "Motions for discontinuance both in law and equity cases are addressed to the discretion of the Court, and should be refused where discontinuance would work prejudice to the defendant."

In the case of the *State v. Southern Ry. Co.,* 82 S. C., 12, 62 S. E., 1116, the motion to be allowed to discontinue the case after issue joined seems to have been granted by the presiding Judge upon the theory that the plaintiff had the right to discontinue and that he had no right to refuse to grant the motion. The Court on appeal, reversing the judgment, said, quoting syllabus 2: "The rule formerly applied in equity cases, that a cause could only be discontinued after issue joined within discretion of trial Judge, when discontinuance would not work prejudice to the defendant applies to law cases. Here the Judge committed error in granting the motion of discontinuance on ground that Attorney-General had the right to do so without considering the reasons presented by defendant against continuance."

Quoting from the body of the opinion, which was delivered by that eminent jurist Mr. Justice Woods, we take this: "That rule has been long established by a number of cases that motions. to discontinue in equity cases are addressed to the discretion of the Court, and will be refused when a discontinuance would work prejudice to the defendant."

The opinion then goes on to show that the rule had been otherwise with respect to actions at law, but that the Courts had long been dissatisfied with the technical distinction between practice at common law and in equity. The opinion then continues: "We think, however, the Code of Civil Procedure of 1902, adopted since the decision of the cases last cited, not only allows, but requires, that the artificial distinction should be abolished, and that the rule of practice in equity making discontinuance depend on the discretion of the Court should be applied to legal actions." Quoting Section 453, Code Civ. Proc. 1902, and citing *Inman & Co. v. Hodges,* 80. S. C., 455, 61 S. E., 958.

It is needless to cite other authorities. We think that while it was discretionary with the Circuit Judge to grant the motion, or to refuse it, that when it appeared that to grant the motion would work injury to the defendants, it was an abuse of discretion to grant the motion. This view has been affirmed in the late case of *Armitage v. Seaboard A. L. R. Co.,* 166 S. C., 21, 164 S. E., 169.

Was it error to sustain the demurrer to the third, fourth, fifth, sixth, seventh, eighth, and ninth defenses?

We think as to the third defense, as it was stated in the answer of Witsell, that it was open to demurrer. It does not state that the holders of the notes ever agreed to release J. M. Witsell from liability thereon. James E. Peurifoy was a joint maker with Witsell, and independent of any agreement between Witsell and Peurifoy he was liable for the note.

We think likewise the demurrer to the fourth defense as stated was correct. It was immaterial to the defendants what sum plaintiff paid for the notes if he paid a valuable consideration therefor.

As the fifth defense depends upon the fourth largely, the demurrer to that defense was properly sustained.

As to the demurrer to the sixth defense the defendant Witsell was a joint maker of the note, and he was bound to know the date of maturity of the note and was not entitled to notice of protest if there had been protest.

As the seventh defense depends upon the third defense in part, the demurrer was properly sustained.

The further allegation in the seventh defense that plaintiff had accepted a renewal of the notes alleged in the complaint from James E. Peurifoy and C. W. Peurifoy could not release Witsell from liability as a comaker of the notes.

The eighth defense sets up laches in bringing the action on the notes. There is no foundation for this, and the demurrer was properly sustained.

As to the demurrer to the ninth defense there is gave doubt. As we understand that defense, it is that a mortgage of real estate given in Florida, given to secure the payment of these notes, is now being foreclosed in Florida; that plaintiff has full and complete remedy in that action now pending in Florida, and ought not to be allowed to maintain this action in South Carolina for the collection of the same debt. The defect in this plea is that it does not state that plaintiff is the owner and holder of the mortgage in Florida, or that it is being foreclosed for his benefit, and for these defects we think the demurrer was properly sustained.

We come to the serious question whether there was error in refusing the motion to amend the defense of Witsell. The amendments are very voluminous, full of unnecessary

repetition, and might well be largely reduced in volume. Much of it, however, is simply a recital of the history of the transaction which led to the giving of the notes and mortgage and the assigning of these notes by the original holders to these defendants.

The proposed third defense alleges the same things alleged in the original third defense, but adds that the original payees of the note not only knew of the transaction between Witsell and J. E. Peurifoy by which Peurifoy assumed obligation for all of the indebtedness of Witsell, but that they sanctioned, ratified, and acquiesced in it in every way. That the plaintiff, who is greatly experienced in Florida real estate and speculative transactions, knew of the indebtedness of J. E. Peurifoy and C. W. Peurifoy to Safford, Stewart, and Underhill, and was informed by James E. Peurifoy that he had assumed all liability of Witsell in the indebtedness to Underhill, Stewart, and Safford and that the latter had acquiesced therein, so that the plaintiff was informed of these facts before he purchased the notes. Further that plaintiff approached James E. Peurifoy with the proposition that if Peurifoy would give him the sum of $100.00, he would go to Florida and purchase the indebtedness at a great discount; that Peurifoy agreed to the proposition and paid plaintiff the sum of $100.-00 to act as his agent in the purchase of the indebtedness; that Peurifoy limited the sum to be paid by plaintiff for all the said indebtedness to $13,000.00; that plaintiff went to Florida and gave a draft on James E. Peurifoy for the sum of $13,160.00 with two of the original notes attached, representing to Peurifoy that these two notes had cost that sum and that that discount was the best he could get; the draft was paid by Peurifoy in the belief that it was genuine and represented the best that could be done; that for the sum of $13,160.00 the plaintiff had purchased all of said notes, and retained for himself three of them, one of which was later paid in cash by James E. Peurifoy, and the remain-

ing two consisting of those originally sued upon in this action; and that by reason of the said trust agreement between plaintiff and James E. Peurifoy the two notes originally sued upon have been fully paid by James E. Peurifoy and that there is nothing due, owing, and unpaid upon them, that concident with the purchase of said notes by plaintiff in trust for the said James E. Peurifoy that plaintiff took an assignment of the mortgage of real estate given to secure said notes which said assignment is dated the 15th of August, 1927, and recorded in the office of the clerk of the Circuit Court of Manatee County, Fla., in Assignment of Mortgage Book J., page 121, on the 17th day of October, 1927; that upon information and belief the plaintiff is not the owner and holder of the said notes in due course.

For a fourth proposed defense the amendment reiterates the allegations set forth in the third proposed defense, except in the tenth paragraph thereof, and alleges that plaintiff is not a holder in due course.

The proposed fifth defense likewise reiterates the allegations of the proposed third defense, and alleges that the notes sued upon have been paid by new notes given by James E. Peurifoy and C. W. Peurifoy.

The proposed sixth defense likewise reiterates the allegations of the proposed third defense, but states as a proposed further defense nothing which we think is competent.

For a proposed seventh defense it reiterates the allegations of the proposed third defense and alleges further nothing which we think sets up a ground of defense which has not been passed upon by the demurrer.

For the proposed eighth defense the allegations of the proposed third defense are reiterated, but it states nothing further which we think is proper.

For the ninth proposed defense the allegations of the proposed third defense are reiterated and adopted, and the further allegation is made that the notes sued upon, and the other notes in the series, were given for the balance due

on certain real estate now being sued upon in Florida; that the said notes as shown on their face were made, executed, and delivered and made payable in the State of Florida, and are governed by the laws of the State of Florida; that a mortgage of the said property was given contemporaneously with and on the same date as the said notes, as security therefor, which said mortgage being forclosed in the Circuit Court in and for the Eighteenth Judicial Circuit, Manatee County, Fla., in a cause entitled *H. F. Randolph v. E. P. Safford and Mable Safford, his wife; Frank P. Stewart and Nellie Stewart, his wife; G. C. Underhill and Agnes E. Underhill, his wife; J. M. Witsell, C. W. Peurifoy, joined by her husband, James E. Peurifoy; James E. Peurifoy; Moses W. Kassel; and C. D. Barr, Jr.,* plaintiff herein; that the plaintiff has a full and complete remedy in the action in the State of Florida, and that he cannot maintain this action in the State of South Carolina with an action in the State of Florida already pending to the same cause; that Section 5751 of the Compiled General Laws of the State of Florida, 1927, provides that no judgment shall be given for the deficiency arising from the foreclosure of a mortgage of real estate except in the discretion of the trial Judge; that in view of the facts hereinabove alleged, and in view of the fact that the plaintiff is not a holder of the notes in due course, this defendant believes that he has a good defense against the recovery of a deficiency judgment; that the notes sued on will be fully discharged by the foreclosure sale; and that there is nothing now due thereon.

It is argued for the plaintiff that these proposed amendments are not amendments of the original· defenses, but set out entirely new matter and new defenses. We do not think so; we think they elaborate the defenses by setting up additional matter, which are germane to the original pleadings and which, if true, constitute defenses.

Section 494, Code of Civil Procedure 1932, provides that: "The Court may, before or after judgment, in

furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding, by adding or striking out the name of any party; or by correcting a mistake in the name of a party, or a mistake in any other respect; or by inserting other allegations material to the case; or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts provided."

In the case of *Pickett v. So. Ry.-Carolina Division,* 74 S. C., 236; 54 S. E., 375; 377, the Court said: "The test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope and varying phases of the testimony."

In the case of *Miller v. Stark,* 29 S. C., 328; 7 S. E., 501, 503, the Court said: "The ground upon which the order of Judge Fraser is assailed seems to be that, after he had sustained the demurrer, and thereby adjudged that the original complaint did not state facts sufficient to constitute a cause of action, there was nothing left to amend by, and hence the order to amend was erroneous. It is quite clear, under the case of *Bischoff v. Blease,* 20 S. C., 460, that this ground cannot be sustained. The amendment allowed did not change, substantially, the claim of the plaintiffs, as in the case of *Kennerty v. Etiwan Phosphate Co.,* 21 S. C., 226 [53 Am. Rep., 669], relied on by appellant, but, as in *Bischoff v. Blease, supra,* it simply provided for the insertion of other allegations deemed material to the case made."

In the case of *Privett v. Railroad Company,* 54 S. C., 98; 32 S. E., 75, we find the following, quoting the second syllabus: "When a complaint shows an intention to state certain facts, without which it is demurrable, the demurrer may be sustained, and leave granted by this Court to amend the complaint."

In the case of *Pickens County v. Love et al.,* 171 S. C., 235, 171 S. E., 799, 804, the special referee in his report

quoted Section 494, Vol. 1, Code Civ. Proc. 1932, as authority for permitting an amendment to any pleading when the amendment does not substantially change the claim or defense, etc. The Circuit Judge in the same case said: "Objection was made to the allowance of plaintiff's motion to amend the complaint. The conclusions above stated show that no amendment was necessary. If, however, an amendment was necessary, it was allowable for the reason stated by the special referee, and also under the authority of *Henderson v. Rice*, 160 S. C., 307; 158 S. E., 258."

The decree of the Circuit Judge was adopted as the opinion of the Court.

In the case of *Norris v. Brown*, 154 S. C., 138; 151 S. E., 274, this Court said: "As long as a complaint states facts which entitle the plaintiff to some relief, it is error to sustain a demurrer upon the general ground. If such cause of action be defectively stated, the defendant's remedy is a motion to make more definite and certain or if the defect is fatal to the cause of action, a demurrer upon the general ground. In such case it is usual and entirely proper to sustain the demurrer with leave to amend."

It is the judgment of the Court that the order of the Circuit Judge granting leave to plaintiff to take a voluntary nonsuit on the first cause of action, and in refusing the motion to amend, be reversed; that the order of the Circuit Judge in sustaining the demurrer to the original answer of Witsell be affirmed. The case is remanded to the Circuit Court for action in accord herewith.

MR. CHIEF JUSTICE BLEASE, MESSRS. JUSTICES STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.