16172

ROMANUS v. BIGGS *ET AL.*
(51 S. E. (2d) 503)

*Messrs. George W. Freeman, Jr.,* of Bennettsville, *Gavin, Jackson & Gavin,* of Sanford, N. C., *and McEachin &*

*Townsend,* of Florence, *for Appellants,*

*Messrs. Samuel Want, James S. Verner, Sam Rogol and LeRoy M. Want,* all of Darlington, *for Respondents,*

January 17, 1949.

OXNER, Justice.

This is a suit in equity brought by George Romanus as a member of a partnership doing business as Biggs Wholesale Liquors against the other alleged partners, D. F. Biggs, M. Stede Stackhouse and T. F. Murphy, for an accounting of the partnership affairs. The South Carolina National Bank was made a party defendant because it had on deposit some of the partnership funds and it was sought to restrain the bank from paying out these funds until the rights of the parties in the partnership assets could be determined. Ernest Biggs was also joined as a party defendant upon the allegation that he operated a retail liquor business in the town of Dillon which was the property of the partnership. This defendant died after the commencement of the action and no steps have been taken to substitute his personal representative as a party defendant. The other defendants demurred to the complaint upon the ground that the partner-

ship agreement provided for the organization and operation of a wholeshale liquor business in violation of law in that it contemplated (a) "the non-disclosure of the names of the partners, and the fraudulent obtention of licenses and permits in the name of D. F. Biggs alone," and (b) "the joint ownership of a retail liquor store by persons engaged in the operation of a wholesale liquor business." As a further ground of demurrer it was asserted that "the plaintiff does not come into court with clean hands, by reason of the violation of law contemplated and provided by the alleged agreement of partnership." The Court below sustained the demurrer and dismissed the complaint. From this order the plaintiff has appealed.

The allegations of the complaint may be briefly summarized as follows: On June 12, 1944, the plaintiff G. J. Romanus, the defendant D. F. Biggs, and one W. J. Samet, entered into a written agreement to engage in the wholesale liquor business. Biggs obligated himself to obtain all necessary licenses and permits, to secure a place in which to do business, and to furnish the equipment, fixtures and all necessary capital. Biggs and Romanus jointly agreed to devote as much time as might be necessary to the operation of the business, while Samet agreed "to spend such time as necessary in connection with locating and purchasing merchandise to be sold by the business." Biggs was to receive 50% of the profits from the operation of the business, Romanus 25% and Samet 25%. It was agreed that the business should be operated in the name of Biggs and all licenses and permits taken in his name. The partnership was subject to termination "upon mutual written agreement of the parties." Other portions of this agreement material to this controversy will be hereinafter mentioned.

After setting out in full the above agreement, it is alleged in the complaint that thereafter Samet withdrew from the partnership and thereupon D. F. Biggs entered into an agreement with defendants Stackhouse and Murphy by

which they became silent partners on the basis that each would receive 25% of the net profits. It was further alleged that D. F. Biggs had always had absolute control of the records which he was concealing from the plaintiff, had recently disposed of or agreed to dispose of the stock of goods and merchandise belonging to the business, and had failed and refused to make any accounting to the plaintiff for his proportion of the profits and assets. Plaintiff further asserted that it was "the intention of the defendants D. F. Biggs and Ernest Biggs to abscond and leave the State of South Carolina and to remove all assets belonging to the partnership referred to and to defraud petitioner (plaintiff) of money and property to which he is justly entitled and for which a proper accounting should be made."

The prayer of the complaint is that the defendants D. F. Biggs, Stackhouse and Murphy be required to present to the Court all partnership records and to furnish a full accounting of its affairs so as to enable the Court to determine the rights and interests of the partners; that said defendants be enjoined and restrained from further conducting the affairs of the partnership and from paying out or disbursing any of its funds; and that a receiver be appointed to take charge of the business.

In sustaining the demurrer, the Court below held that the complaint was based upon "a collusive contract made with the intent to subvert the applicable governmental regulations relating to the licensing and operation of a wholesale and retail liquor business," and that the Court should not lend its aid in the enforcement of such an illegal agreement.

We shall first discuss the contention that the contract is illegal because it "contemplates the non-disclosure of the names of the partners, and the fraudulent obtention of licenses and permits in the name of D. F. Biggs alone". This contention is based largely on the following provision of the contract: "It is specifically agreed and understood that the

business shall be operated in the name of D. F. Biggs and all licenses and permits shall be taken in his name."

Section 1830 of the Code of 1942, which was in effect at the time of the execution of the written agreement referred to in the complaint, requires "every person" desiring a license to engage in business as a manufacturer, wholesaler or retailer of alcoholic liquors to file with the Tax Commission an application setting forth under oath the name, address, age, race and nationality of the applicant and also of the person who shall have actual control of the business proposed to be operated. If there is more than one applicant, the above information is required as to each. The applicant must also give a description of the place where the business is to be conducted and certain other facts which need not be detailed. It is stated in Section 1829(b) that "the word 'person' means and includes natural persons, associations, co-partnerships and corporations." Section 1832 authorizes the Tax Commission, upon the filing of the application provided in Section 1830, to issue a license to the applicant if the commission "is convinced that the facts stated in the application are true and that the applicant is a fit person to engage in or operate said business, and that the location is a proper one," provided the applicant complies with the other requirements of the statute. Although the foregoing sections of the Code were "superseded, suspended and terminated" by the Alcoholic Beverage Control Act of 1945, Act No. 211, 44 St. at L., 337, substantially all of the provisions above mentioned were re-enacted. See Section 7(b) and (c) of the 1945 Act.

Not only do none of these statutes prohibit a partnership from engaging in the wholesale liquor business but clearly recognize the right of such an association to do so. The Court below conceded that a partnership may lawfully engage in such business, but concluded that the partnership agreement in question contemplated obtention of the license to do business by fraudulent concealment of the true facts

from the Tax Commission. Appellant vigorously challenges this interpretation.

In determining whether a contract is void for illegality, it will be presumed that it only involves the doing of a lawful and proper act. Illegality is never presumed but must be proved, or must clearly appear upon the fact of the contract. *Burdine v. Burdine, Executor, et al.,* 98 Va. 515, 36 S. E. 992, 81 Am. St. Rep. 741. "Although an agreement is illegal, if the illegality does not appear on its face, it must be proved by the person who asserts it." 12 Am. Jur., Contracts, Section 224. "An agreement capable of an interpretation which will make it valid or legal will be given such interpretation if the agreement is ambiguous. Such interpretation is preferred to one which renders it invalid." 12 Am. Jur., Contracts, Section 251. "A sound public policy requires the enforcement of contracts deliberately made which do not clearly contravene some positive law or rule of public morals." *Crosswell v. Connecticut Indemnity Association,* 51 S. C. 103, 28 S. E. 200, 205.

Considering the partnership agreement before us in the light of these principles, we cannot say that it clearly appears on the face thereof that it contemplates the doing of an unlawful act. The information which an applicant for a license to sell liquors either at wholesale or retail is required to give under oath in his application is to enable the Tax Commission to determine whether such applicant is qualified to receive a license and whether he is a proper and fit person to engage in such business. The parties to this contract have not undertaken to specify the facts which shall be stated in applying for a license to do business. It will not be presumed that they intended to enter into a conspiracy to conceal either the identity of the partnership or its members. The agreement merely states that all licenses and permits shall be issued and the business operated in the name of D. F. Biggs. A full disclosure in the application of the names of the partners would not have constituted a

breach of this agreement. Apparently a license to do a wholesale business was issued by the Commission but there is nothing in the complaint to show that it was induced to do so by a fraudulent concealment of the true facts, or that the Commission has ever made any effort to revoke the license issued.

In the recent case of *Ex parte* Rosenfeld (*In re* Estate of Langley), (S. C.) 51 S. E. (2d) 88, 90, the facts were these: Rosenfeld was unable to secure a renewal of his license to operate a retail liquor store because he had violated certain regulations promulgated by the Tax Commission. He thereupon entered into a written agreement with Langley, who had been employed as a clerk in said store, whereby Rosenfeld agreed to sell the stock of liquors to Langley, taking a mortgage on same to secure the purchase price, and to finance him in the operation of the store. A license to do business was obtained by Langley. Several months later Langley died and Rosenfeld filed a claim against his estate based upon this written agreement. The Court below concluded that the agreement was a mere subterfuge to evade the law with respect to the operation of liquor stores and that the business in reality continued to be that of Rosen feld, and held that it should not lend its aid to the enforcement of such an illegal agreement. Rosenfeld appealed. In reversing the decision of the lower Court and upholding the validity of the agreement, the Court observed: "No statute or rule of the liquor law-enforcement agency has been called to our attention which the role or acts of the appellant (Rosenfeld) violated. Moreover, it is important that this contest is not between appellant and the State. Misleading or false statements by appellant and Langley (to the State's agents) relating to the later's financial arrangements, of which there was evidence, are not relevant to the issue upon trial, which was the alleged indebtedness of Langley's estate to appellant."

It is also claimed that the partnership agreement violates the "applicable Federal statutes and regulations but the Court below does not, nor do respondents in their demurrer, point out any specific Federal statute or regulation that it violates. Counsel for respondents refer in their brief to certain regulations issued by the Treasury Department. They are not mentioned or incorporated in the record for appeal and are not properly before us.

Appellant calls our attention to Section 7(d) of the Alcoholic Beverage Control Act of 1945, which is as follows:

"No license shall be issued to a corporation or association as such, and if any application is made for a corporation or association the license, if granted, shall be issued to an officer or officers thereof for its use, and such officer or officers shall be held to assume all responsibility thereunder as individuals and shall be subject to all the provisions and penalties set forth in this Act as applicable to individual licensees."

. Appellant contends that under the foregoing provision a license to a partnership may be issued in the name of one of the partners. We find it unnecessary to construe this provision and do not undertake to intimate any opinion upon the construction advanced by appellant.

The remaining ground upon which respondents assail the validity of the partnership agreement is that "it provides for the joint ownership of a retail liquor store by persons engaged in the operation of a wholesale liquor business." The only reference in the agreement to the sale of liquor at retail is as follows:

"The said D. F. Biggs has control of Biggs Retail Liquor Store which is referred to hereafter as the retail store. * * * The profits and the operation of the wholesale store and the proportionate part of the profits of the retail store are to be divided as follows. * * * In computing the amount of profit derived from the retail store the same shall be the net

profit after deducting ordinary and necessary expenses as the proportionate part as such liquor furnished by this wholesale concern shall bear to the total amount of liquor obtained by the retail store from other wholesale concerns."

It will be noted that the effect of the foregoing provision was not to vest ownership of the retail liquor store in the partnership, nor does it contemplate operation of his store by the partnership. Liquor could be purchased from any wholesaler. The only interest of the partnership was in the profits derived from the retail sale of liquors purchased from it. It had no interest whatsoever in profits made at this store on the sale of liquors bought elsewhere.

There was no statute or regulation in effect at the time of the execution of this agreement prohibiting a wholesale liquor dealer from owning or having an interest in a retail store. Legislation to this effect was first enacted in 1945. The Alcoholic Beverage Control Act of that year provides:

"Section 4(b) (3) No wholesale licensee shall have any interest, either directly or indirectly, in any retail liquor store in the State and the Tax Commission is hereby authorized and directed to revoke the license for any wholesaler, whenever proof is obtained that such wholesaler has an interest, either directly or indirectly, in any retail store."

We are not concerned with the further enlargement of the above prohibition made after the commencement of this action. See Section 91d(e) of Act No. 286 of the Acts of 1947, 45 St. at L., page 700.

The demurrer is only directed to the alleged illegality of the agreement and not to the manner in which the business was subsequently operated. It is clear that the provision with reference to the retail store was valid when made. The complaint does not disclose whether this arrangement continued after the passage of the 1945 Act. Appellant contends that even if the retail phase of the business was illegal, this would not preclude him from recover

ing his share of the profits earned by the retail store from the sale of liquors purchased from the partnership. It is argued that such a violation would be of a technical nature, not involving public morals or public policy, which could at most result only in the revocation of the wholesale license. We find it unnecessary to pass upon this contention. Nor do we pass upon appellant's further contention that even if any portion of the agreement or any phase of the partnership operations is found to be illegal, it would be separable from the other phases of the business.

We conclude that it does not appear from the face of the complaint that appellant is seeking the aid of the Court in adjusting the accounts or dividing the spoils of a fraudulent or illegal enterprise. That is the only question before us. Whether, in fact, the partners in this business were actually engaged in such an undertaking is a matter that will have to be determined on the trial of the case. What has been said also disposes of respondents' contention that appellant comes into court with unclean hands.

Respondents' counsel further assert that even if the demurrer is overruled as to Biggs, it should be sustained as to Stackhouse and Murphy. It is said that these two defendants, according to the allegations of the complaint, came in as silent partners under an agreement with Biggs; that they incurred no obligation to appellant; and that there was no contract between him and the two defendants mentioned. In answer to this contention, it is sufficient to say that if Stackhouse and Murphy are members of this partnership, they are proper parties to an action for an accounting of the partnership affairs.

The order sustaining the demurrer is reversed and the case is remanded, with leave to respondents to answer the complaint within twenty days after the filing of the remittitur.

BAKER, C. J., and FISHBURNE, STUKES, and TAYLOR, JJ., concur.