16360

ROMANUS v. BIGGS *ET AL.*

(59 S. E. (2d) 645)

*Messrs. Samuel Want, Sam Rogol and Leroy M. Want,* all of Darlington, *for Appellants,*

*Messrs. E. L. Gavin, of* Sanford, N. C., *and McEachin & Townsend,* of Florence, *for Respondent*

May 23, 1950.

BAKER, Chief Justice.

The appellants in this case, who were defendants in the Court below, have appealed from an order of Honorable J. Woodrow Lewis, Judge of the Fourth Circuit, dated July 26, 1949, granting a motion on the part of the respondent, who was the plaintiff in the Court below, for "a voluntary nonsuit without prejudice in this cause."

The suit was brought by George Romanus (sometimes herein referred to as G. J. Romanus), the respondent, for

the purpose of obtaining a partnership accounting, an injunction restraining the disposition of the partnership assets and the appointment of a receiver. The defendant, Ernest Biggs, having died after the commencement of the suit, and no personal representative having been substituted in his place, the only defendants now before the Court are the appellants, D. F. Biggs, D. F. Biggs, doing business as Biggs Wholesale Liquors, M. Stede Stackhouse, T. F. Murphy and South Carolina National Bank.

The complaint herein, which has been designated as the petition, but which we shall refer to as the complaint, alleges the existence of a partnership between respondent and the appellants, D. F. Biggs, M. Stede Stackhouse and T. F. Murphy, and that D. F. Biggs has had control of all records of the partnership, has disposed of or agreed to dispose of all of its merchandise, and has failed and refused to make any accounting to respondent for his interest in the business. It is further alleged that the profits arising out of the business are in the possession of the defendant, D. F. Biggs, or in the custody of the defendant, South Carolina National Bank, or one or all of the defendants, or parties unknown to the plaintiff.

With the complaint there was served on the defendants an order of the Court, whereby they were restrained from disposing of any assets of the partnership, except in the usual course of business, and it was ordered that the proceeds of all sales be retained and held until the further order of the Court. The defendants were also required to show cause why a receiver should not be appointed, a full and complete accounting of the business ordered, and the restraining order continued during the pendency of the suit.

The defendants, other than Ernest Biggs, the deceased defendant, filed a joint demurrer to the complaint and also filed separate answers. The demurrer was sustained by the Circuit Court, but on appeal to this Court the order sustaining the demurrer was reversed and the case was re-

manded for further proceedings. *Romanus v. Biggs et al.,* 214 S. C. 145, 51 S. E. (2d) 503.

The answer of the defendant, D. F. Biggs, individually and trading as Biggs Wholesale Liquors, admits that he entered into some agreement with G. J. Romanus and W. J. Samet for the formation of a partnership to operate a wholesale liquor business, but denies that the partnership agreement was ever carried into effect, and alleges that the formation of the contemplated partnership was abandoned, and that he thereafter became engaged in the wholesale liquor business on his own account and for his individual benefit. He further alleges that when he undertook to go into the wholesale liquor business on his own account he was unable to finance the operation, and sought help from South Carolina National Bank, but was advised by the defendant, T. F. Murphy, the bank's manager at Dillon, S. C., that it would be impractical for the bank to assist in financing him without the endorsement or guaranty of a person of large financial responsibility; that he then proposed to his co-defendant. M. Stede Stackhouse, that if Stackhouse would make and endorse notes as required by the bank upon the security of warehouse receipts, covering the stocks of liquors proposed to be acquired from time to time, Stackhouse would be compensated for such loan of his credit; that Stackhouse thereupon agreed to this proposal and made and endorsed notes for large amounts, which were discounted by the bank; that the defendant Stackhouse has had no other interest in the wholesale liquor operation involved; and that the defendant, T. F. Murphy, has never had or claimed any interest in the business. The answer of the defendant, D. F. Biggs, further pleaded the following as an additional defense:

"For a further and separate defense and by way of counterclaim this defendant alleges:

I

"That he adopts all and singular the allegations of his preceding defense, and makes them a part of this defense, to the same extent as if such allegations were here repeated.

## II

"That if the Court in this cause should adjudicate that the plaintiff and this defendant were partners in the operation of the wholesale liquor business conducted by this defendant, then a full accounting of the partnership should be ordered, and judgment should be rendered in this cause against the plaintiff as a partner as found by the Court, for his proportionate share of the losses sustained by the partnership, as the same may be determined by the Court."

The answer of the defendant, M. Stede Stackhouse, after denying the existence of the partnership referred to in the complaint, alleges that he has no interest in the business referred to other than as a creditor, in that for a consideration he agreed to assist in financing certain individual operations of D. F. Biggs, and loaned his name as maker and endorser to enable D. F. Biggs to obtain credit at South Carolina National Bank; that the South Carolina National Bank has advanced large sums of money to D. F. Biggs upon the credit of the defendant, M. Stede Stackhouse, and upon certain collateral; that if any such partnership existed, and is concerned in any manner with the transactions in which his credit was loaned, he is equally interested with the plaintiff in having such records produced; and that he has no objection to the granting of any appropriate relief by way of discovery or examination before trial but objects to the appointment of a receiver.

The answer of the defendant, T. F. Murphy, alleges that he is manager of the Dillon branch of South Carolina National Bank, and as such manager handled the loan transactions referred to in the answer of the defendant, M. Stede Stackhouse, but that he has no other connection with or interest in any of the matters set forth in the complaint.

The answer of the defendant, South Carolina National Bank, alleges that it has no interest in or connection with any of the matters set forth in the complaint, except that through its Dillon branch it made certain loans to or for

the account of D. F. Biggs, trading at Biggs Wholesale Liquors; that the loans were secured by the credit of the defendant, M. Stede Stackhouse, and certain State warehouse receipts for various quantities of liquor in cases; that the said security is in process of liquidation subject to the orders of the Court; and that the proceeds of sale of the liquors will be less by many thousands of dollars than the amount of the liability to it for which the defendant, M. Stede Stackhouse, is liable.

On February 13, 1947, in response to separate petitions submitted by the defendants, M. Stede Stackhouse and South Carolina National Bank, Honorable J. Woodrow Lewis, Judge of the Fourth Circuit, issued an order requiring the plaintiff, G. J. Romanus, to show cause why the collateral held by South Carolina National Bank as security for the indebtedness of D. F. Biggs and D. F. Biggs, doing business as Biggs Wholesale Liquors, should not either be sold or the plaintiff, G. J. Romanus, be required to file bond in an amount necessary to protect the petitioners.

The petition of the defendant Stackhouse, after stating his liability to South Carolina National Bank as maker or endorser of notes executed pursuant to the loan of his credit to D. F. Biggs and the wholesale liquor business operated by him, alleged that the notes were secured by the pledge of warehouse receipts covering 1530 cases of cheap and inferior brands of liquors, the price of which had recently greatly diminished; that due to the falling market the defendant, D. F. Biggs, had discontinued his liquor business and assigned his assets to South Carolina National Bank in part payment of the indebtedness, but leaving still due thereon at least $62,000.00 less possible credits of about $5,000.00 from collections made on certain C. O. D. sales, thereby leaving a deficit of $57,000.00 or more secured only by the warehouse receipts and the signature of the petitioner. The petitioner also further alleged that he had already suffered a severe financial loss; that he, D. F. Biggs and various offi-

cers of the bank had sought offers for the pledged liquors, and that the highest offer they were able to obtain was $50,-000.00 conditioned upon immediate acceptance, which offer was thereafter withdrawn and reduced to $40,000.00 conditioned upon acceptance not later than February 14, 1947; and that the plaintiff being a man of little property and unable to respond in damages, should be required to execute bond in at least the sum of $25,000.00 if he should seek to further delay the sale of the collateral.

The petition of South Carolina National Bank sets forth substantially the same facts as those alleged in the petition of the defendant, M. Stede Stackhouse, and includes an allegation to the effect that the value of the collateral has declined to the extent of $10,000.00 due to the inability to accept the offer of $50,000.00 by reason of the institution of this suit.

In response to these petitions on February 14, 1947, Judge Lewis ordered a sale of the warehouse receipts covering the 1,530 cases of liquors, as provided by the terms of the notes and other security held by South Carolina National Bank, but directed that the proceeds of the sale be deposited with the bank in a special account to be held subject to the further order of the Court. This order of February 14, 1947, was subsequently modified by another order dated May 12, 1947, whereby South Carolina National Bank was permitted to apply the funds arising from the sale of the warehouse receipts to the notes secured by the liquors and the receipts therefor, but upon the condition that the bank continue liable to plaintiff for the funds if by the final order of the Court the plaintiff should be found to be entitled to all or any part of such funds.

The order granting plaintiff's motion for a voluntary nonsuit, from which this appeal has been taken, was granted on July 26, 1949, and although there are six exceptions they will all be sufficiently covered by determining whether appellants suffered such prejudice as to require a finding that the Circuit Judge erroneously exercised his discretion.

This being a suit in equity, *Bouland v. Carpin,* 27
S. C. 235, 3 S. E. 219; *Romanus v. Biggs et al.,* 214
S. C. 145, 51 S. E. (2d) 503, and motions for non-
suit not being entertained or granted in suits in equity, *Jeff-
erson Standard Life Ins. Co. v. Boddie et al.,* 202 S. C. 1, 23
S. E. (2d) 817, it may be that Respondent's motion and
the Court's order thereon are not technically accurate in re-
ferring to the motion as a motion for a voluntary nonsuit.
It has been held that there is a distinction between a discon-
tinuance and a nonsuit, 27 C. J. S., Dismissal and Nonsuit,
§§ 2 and 3, but the result being the same and the distinction
being wholly technical and unimportant we have no hesita-
tion in treating respondent's motion as a motion to discon-
tinue.

It has long been the rule that motions to discontinue
in equity cases are addressed to the discretion of the
Court and will be refused when discontinuance will
work prejudice to the defendant, but at one time the rule
was otherwise as to actions at law, in which a plaintiff was
permitted to discontinue or take a nonsuit as a matter of
right. However, dissatisfaction arose with this wholly arti-
ficial distinction, and the well settled rule now is that mo-
tions to discontinue are addressed to the discretion of the
Court both in suits in equity and in actions at law. *State v.
Southern Ry. Co.,* 82 S. C. 12, 62 S. E. 1116.

At one time it was also apparently thought that the
granting of a motion for a voluntary nonsuit or a
discontinuance made after the commencement of the
trial rested within the discretion of the Court, but that a
plaintiff was entitled as a matter of absolute right to the
granting of such a motion if made before trial. The syllabus
of the case of *Cunningham v. Independence Ins. Co.,* 182
S. C. 520, 189 S. E. 800, appears to indicate that this is
the rule in South Carolina, but we think due consideration
of the case will show that it does not so hold and that the
syllabus is not justified and is misleading. In any event the
question is put at rest by the later case of *Parnell v. Powell*

*et al.,* 191 S. C. 159, 3 S. E. (2d) 801, 802, in which the true rule is thus stated: "From a review of our own decisions and those from other jurisdictions, we are unable to perceive any sound reason for holding that a plaintiff has an absolute right to take a voluntary nonsuit before trial, irrespective of a showing of substantial prejudice by the defendant. In our opinion, the Court should exercise its discretion in passing upon such motions, whether made prior to the commencement of the trial or after the trial has been entered upon."

The exercise of the Court's discretion to refuse a motion for a voluntary nonsuit or a discontinuance is perhaps usually invoked in those cases where the defendant has set up a counterclaim or asked for affirmative relief, and it has been somewhat debated by appellants and respondent as to whether the affirmative defense contained in the answer of the defendant D. F. Biggs, individually and doing business as Biggs Wholesale Liquors, and therein designated as a counterclaim, is in reality a counterclaim, but we do not think that the determination of this question is necessary or even of any special importance in the decision of this case. The vital question here, as in all cases of this character, is whether defendants will suffer prejudice by the discontinuance. *State v. Southern Ry. Co.,* 82 S. C. 12, 62 S. E. 1116; *Barr v. Witsell et al.,* 173 S. C. 199, 195 S. E. 436; *Parnell v. Powell et al., supra.*

After due consideration of the entire record and the situation of the parties, we do not think there can be any doubt that it would work a hardship and be unduly prejudicial to appellants to permit the discontinuance of this suit over their objection.

It appears that large losses have already been incurred on account of the bringing of this suit, and that further losses will likely occur. It is of the utmost importance to the appellants to have some final settlement and disposition of the affairs of this wholesale liquor business. If respondent has no interest in the business appellants are clearly entitled to know

it definitely so that they may proceed with the winding up of the business in an orderly manner without fear of further interference, and if respondent has an interest in the business appellants are equally entitled to know that as soon as possible without having the threat of respondent's future interposition held over their heads.

Respondent has stated no reason for the discontinuance of this suit, and so far as the record discloses he has presented nothing to show that a discontinuance is necessary to the protection of any right that he may have. He should not be permitted thus to hail appellants into Court, then have them dismissed, and then perhaps hail them in again according to his pleasure. As well said in *State v. Southern Ry. Co., supra:* "* * * The reason for dissatisfaction with a rule that one man should be allowed to draw another into litigation and drop him out at pleasure, without a decision of the issue tendered, is much stronger now since costs have been practically abolished, and the penalty of having to pay them no longer deters plaintiffs from seeking unfair discontinuances. * * *" [182 S. C. 12, 62 S. E. 1117].

The order of the Circuit Judge granting plaintiff's motion seems to be based largely, if not wholly, upon this conception of the situation, as stated in his order: "Legal prejudice cannot be bottomed on the fact that charges are made against the defendants in the complaint which, if dismissed under this motion, would leave such charges hanging in the air." Under the circumstances of this case to which we have already referred, we are unable to agree with this view. It entirely ignores the importance to appellants of having the issues finally determined so that they may definitely know what their rights are in trying to salvage some of the wreckage of a disastrous venture.

The case of *State v. Southern Ry. Co.,* 82 S. C. 12, 62 S. E. 1116, to which we have already several times referred, was a suit brought by the Attorney General in behalf of the

State to have annulled agreements for the consolidation of certain lines of railroad into one corporation to be called Southern Railway-Carolina Division, and also to have annulled a lease executed by Southern Railway—Carolina Division to Southern Railway Company. The consolidation and lease were put into effect under the authority of and in compliance with an act of the General Assembly, and the suit was based upon the claim that the act was in conflict with Article IX, Section 7, of the Constitution prohibiting any railroad company from consolidating with or leasing a parallel or competing line. The answers of the railroad companies involved denied that they were parallel or competing lines within the meaning of the Constitution. After issue was joined, on motion of the Attorney General, the suit was discontinued, and the defendant railroad companies appealed to this Court, which reversed the order of the Circuit Court permitting the discontinuance. The following excerpts from the opinion of the Court in that case, showing some of the reasons prompting the Court in reaching its conclusion, seem quite applicable to the situation presented in this case:

" * * * The defendant railroad companies were vitally concerned because the uncertainty as to their corporate status and corporate rights would of necessity produce doubt and distrust of their corporate securities, and prevent the Southern Railway Company, whose lease is attacked, from undertaking development and improvement. * * *

* * *

" * * * Indeed, the general rule is, that the plaintiff has the right to let fall his action, unless the defendant can show plainly that the discontinuance would work material injury to him. But when the defendant, assuming that burden, plainly shows material injury to himself, then it is plain the plaintiff, in order to bring into exercise the discretion of the court, in his behalf, ought to show that some injury would result to him from a trial of the action. So in this case, notwithstanding the great importance to the

defendants of a speedy trial of the cause, the court might well have granted the motion upon a showing that a trial of the case would be prejudicial to the state. But the record is entirely devoid of such showing.   *   *   *

"*   *   *,   the question whether the reasons for the discontinuance were of force sufficient to countervail the strong grounds presented by the defendants against the discontinuance was a question for the court to decide in the exercise of its discretion. As these reasons were not presented to the court, the case, as it comes to this court, is this: The plaintiff moves to discontinue without stating any reason; the defendants oppose the motion, showing beyond all doubt that the speedy decision of the issues tendered by the plaintiff is of great importance to them; that the statute under which the action was brought specially provides that they shall have a speedy decision; and that a discontinuance of the action will be seriously prejudicial to them. Not only is this proof of the defendant uncontroverted, but nothing whatever is presented to the court tending to show that a discontinuance is essential to the protection of the interests of the state, or that its interests would suffer any detriment whatever from a trial of the issues, as made by the pleadings. This being the state of the case, there was no support for the order in the discretion of the court.   *   *   *"

The respondent in the case with which we are now concerned has brought appellants into Court against their will, and has thereby caused or at least contributed to very considerable hardship and inconvenience, if not very substantial financial loss, on their part or on the part of some of them. We do not think he now ought to be permitted, without assigning any reason at all therefor, to have the suit he has brought discontinued over the objection of appellants without a final decision of the issues he has tendered, while at the same time holding over their heads the threat of further proceedings in relation to the same matters. We think appellants are clearly entitled to have the issues tendered by respondent definitely and finally settled.

The order from which this appeal has been taken is reversed, and the case is remanded to the Circuit Court for such further proceedings as may be appropriate.

FISHBURNE and STUKES, JJ., concur.

TAYLOR and OXNER, JJ., dissent.

TAYLOR, Justice (dissenting.)

For the reasons set forth in the Order of the Circuit Judge, dated July 26, 1949, I am of the opinion that the Trial Judge in exercising his judicial discretion did not do so arbitrarily or for reasons clearly untenable or unreasonable. *State v. Scates,* 212 S. C. 150, 46 S. E. (2d) 693. *Prudential Insurance Co. v. Stack,* 4 Cir., 60 F. (2d) 830.

OXNER, J., concurs.