16158

*EX PARTE* ROSENFELD
*IN RE* LANGLEY'S ESTATE
(51 S. E. (2d) 88)

*Messrs. McDonald & McGowan,* of Florence, *for Appellant,*

*Messrs. Mozingo & Watts* and *C. R. Parrott,* of Darlington, *for Respondent,*

December 15, 1948.

STUKES, Justice:

Appellant was engaged in the year 1943 in the operation of several State-licensed, retail liquor stores, one of which was in Darlington. The license of the Darlington store was first suspended and then renewal was refused because of alleged violations of ceiling sales prices. W. J. Langley, now deceased, was employed for many years as a clerk in the store and was paid a salary of $15.00 per week plus a bonus of $5.00 to $10.00. With the aid of a local attorney, license for the subsequent operation of the store was obtained by Langley and the stock of goods transferred to him, whereupon he executed a rental agreement covering the store building, which was owned by appellant, and a lengthy written contract with the latter which was also in terms a chattel mortgage.

This instrument is the controlling document in the case and its more important contents will be briefed. First it purports to evidence a sale of the liquor on hand to Langley who agreed to purchase on credit for $1,255.72. Appellant

was obligated to advance the moneys necessary to obtain State and Federal licenses ($307.50) and additional unnamed sums for expenses, and further advances of not exceeding $1,500.00 every thirty days in order to maintain a liquor stock of not less than $2,000.00 wholesale inventory. Langley promised to repay these sums, including those afterward advanced under the terms of the contract, together with seven per cent annual interest thereon, at the rate of $25.00 per week, until principal and interest should be paid. Langley was required to make an accounting to appellant upon demand at any time and pay over all funds then in hand. Daily, detailed sales records should be kept and the proceeds deposited each day in the name of Langley in a designated bank. Operating expenses and purchases should be paid by checks on the bank account and Langley was limited to $15-.00 per week for himself and, with appellant's approval, $3.00 per week for additional help. It was further provided that all receipts of Langley from the operation of the store should be held by him in trust for application to the payments provided by the agreement. There was a penalty clause whereby violation by Langley of any of the terms of the agreement should give rise to an optional right of appellant to forthwith foreclose the lien created by the agreement upon the stock of liquors and the funds deposited from the sales, with surplus, if any, above the indebtedness, and the costs and expenses of foreclosure, reverting to Langley.

This written agreement and mortgage was dated Aug. 1, 1943, executed by both parties in the presence of the draftsman-attorney's stenographer and the Clerk of Court at the latter's office, and was duly probated before the Clerk but not recorded.

Langley became ill a few weeks after he took possession and began operation of the liquor store and it was conducted by members of his family during the few remaining weeks until his death on Oct. 27, 1943. Appellant made unsuccessful effort to have Langley's widow as administratrix of his

estate continue the operation of the store. The Probate Judge declined approval of this proposed arrangement and another was appointed administrator of the estate. He is respondent in this proceeding.

Appellant filed claim against the estate showing a balance of indebtedness to him of $2,195.71. It consisted of items which included the amount of the inventory of liquors at the time Langley took charge of the store, cash advances, thereafter made, invoices paid, State and Federal licenses, bond premium, attorney's fee, insurance premium, and finally the cost of telegrams and a trip to Columbia, which last items appellant testified were expended in his efforts to procure liquors for the business. Eight credits at about weekly intervals aggregated $3,610.46, and there was an additional credit, entered as "paid on invoices", of $1,315.00.

Upon contest of the claim the Probate Judge held a hearing and took testimony which is in the record and from which the foregoing facts have been derived. He disapproved payment upon the ground that the agreement and arrangement between appellant and Langley was a subterfuge to evade the law with respect to the operation of liquor stores and that the business in reality continued to be that of appellant; that the evidence established that the State was misled by appellant or it would not have issued the license to Langley; and the court should not lend its aid to the enforcement of the agreement which was against public policy and, therefore, unlawful.

The matter was heard by the Court of Common Pleas on appeal from the Probate Court and the judgment of the latter was affirmed, particularly that the claim against the estate of Langley was based upon an agreement and arrangement which was unenforceable for violation of public policy.

There were objections on trial to the competency of various portions of the evidence but all of it was considered and the former questions thereabout have disappeared from the case for lack of preservation of them upon appeal.

The exceptions, of course, make the issues here and appellant's contentions can be conveniently set forth by reproduction of his exceptions, except the fourth which is too general for consideration. They are as follows:

"1.   That the Court erred, it is respectfully submitted, in finding and holding that the contract and chattel mortgage entered into between claimant and deceased was contrary to public policy and unlawful when there was not a scintilla of competent evidence to support such a finding and all of the competent evidence proved that the contract and chattel mortgage was legitimate and sanctioned by the laws of this State.

"2.   That the Court erred, it is respectfully submitted, in finding that the agreement and arrangement between claimant and deceased was nothing more than an arrangement whereby claimant was operating the liquor store in the name of the intestate when the only reasonable inference from the testimony is to the contrary and that claimant was forced to sell the liquor store and that the arrangement and agreement entered into was nothing more than an attempt by appellant to protect the money which the purchaser owed him as a result of this purchase.

"3.   That the Court erred, it is respectfully submitted, in finding that the acts of claimant in the management and control of the business showed that claimant looked to the profits of the business rather than interest upon the debt owed when there was no testimony of any acts by the claimant in the management of the business or any interference in the management of the business other than those acts which had as their purpose to see that the business continued to operate and that the inventory and money on hand and the withdrawals from the business be open to inspection so that claimant as creditor might be in a position to protect his lien."

There was no evidence that appellant was to get more out of the venture than the value of his stock of goods, the cash advances to be made by him, and in-

terest on the whole until paid. The agreement provided that intestate should pay upon the indebtedness only "until the entire amount of both principal and interest shall have been paid in full." And the mortgage feature continued in force, quoting again, "until this agreement has been fully complied with, and payment thereof has been made of the amounts of the purchase price * * * and all advancements together with interest."

If there was to have been a division of profits in the operation of the business, which the holdings under review seem to contemplate, there was no provision in the agreement to that end and no evidence *aliunde* to that effect; and it appears from the record that the store left losses at the death of the intestate instead of profits. Apparently overlooked in the consideration of the lower courts is the fact that appellant had an interest to serve in the continued occupancy of the store building, for which the lease agreement provided the substantial monthly rental of $50.00. This may explain the risk he took and the loss he appears to have sustained. That he was also to share or take the anticipated profits of the business must be based, under the facts in the record, upon surmise and conjecture which, of course, cannot substitute for evidence. No statute or rule of the liquor law-enforcement agency has been called to our attention which the role or acts of the appellant violated. Moreover, it is important that this contest is not between appellant and the State. Misleading or false statements by appellant and Langley (to the State's agents) relating to the latter's financial arrangements, of which there was evidence, are not relevant to the issue upon trial, which was the alleged indebtedness of Langley's estate to appellant.

The rule of invalidity of contracts for violation of public policy is perhaps more restricted in this State than in other jurisdictions. *Weeks v. New York Life Ins. Co.,* 128 S. C. 223, 122 S. E. 586, 35 A. L. R. 1482. *Alderman v. Alderman,* 178 S. C. 9, 181 S. E. 897, 105 A.

L. R. 102, and cases there cited. "A sound public policy requires the enforcement of contracts deliberately made which do not clearly contravene some positive law or rule of public morals." *Crosswell v. Connecticut Indemnity Ass'n.*, 51 S. C. 103, 28 S. E. 200, 205.

There is no established public policy which prevents one who has been debarred from operating a liquor store from thereafter "financing" his successor or the person to whom he sells his former business. This is so because there is no prohibitory statute; nor is it *mala in se.* The decisions cited to the point by respondent need not be reviewed for they are wholly inapplicable. They are *Strickland v. Anderson*, 186 S. C. 482, 196 S. E. 184; *Grant v. Butt*, 198 S. C. 298, 17 S. E. (2d) 689; and *Dill v. Sovereign Camp, W. O. W.*, 202 S. C. 401, 25 S. E. (2d) 285.

There was no evidence adduced which would reasonably support the challenged factual conclusion that appellant continued to own and operate the business after expiration of his license. The controls which he kept upon it were stringent but were consistent with the recitals of the agreement and mortgage that it was to secure the payment of the large indebtedness to him, and no more.

The exceptions are sustained and the judgment reversed; the proceeding is remanded for further steps consistent herewith.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.