302 S.C. 469 (1990)
395 S.E.2d 446
Robert H. CHAPMAN, Jr., Sally Quantz and Alice Ballenger, and Robert H. Chapman, Jr. and T. Sam Means, Jr., as Trustees under the Will and of the Estate of Robert H. Chapman, deceased, Appellants
v.
The CITIZENS AND SOUTHERN NATIONAL BANK OF SOUTH CAROLINA, as Trustee under the Will and of the Estate of Robert H. Chapman, deceased, The Citizens and Southern National Bank of South Carolina, as Executor under the Will and of the Estate of Laura Noell Carr Chapman, deceased, and Austin Heaton Carr and Charles Noell Carr, as Legatees, Devisees and Beneficiaries under the Will of Laura Noell Carr Chapman, deceased, Respondents.
1528
Court of Appeals of South Carolina.
Heard February 19, 1990.
Decided July 23, 1990.
*470 *471 *472 Thomas E. McCutchen and Hoover C. Blanton, both of Whaley, McCutchen, Blanton & Rhodes, Columbia, and Frank A. Lyles, of Lyles, & Hammet, Spartanburg, for appellants.
James B. Drennan, III, of Drennan, Shelor, Cole & Evins, Alan M. Tewkesburg, Jr., and Paul B. Zion, both of Holcombe, Bomar, Wynn & Gunn, Spartanburg, for respondents.
Heard Feb. 19, 1990.
Decided July 23, 1990.
GARDNER, Judge:
In this action the plaintiffs seek, inter alia, to have a constructive trust imposed upon the subject property because of an abuse of confidential relationship which existed between Robert H. Chapman, Sr., now deceased, and his second wife and widow, Laura Noell Carr Chapman, now deceased. The appealed order did not address the existence of a confidential relationship between Mr. and Mrs. Chapman nor did it address the effect that a confidential relationship between them would have had on the results of this case. The appealed order relying, erroneously, we hold, on the case of All v. Prillaman, 200 S.C. 279, 20 S.E. (2d) 741 (1942) found there was no original fraudulent intent and therefore imposed no constructive trust. The trial judge, erroneously, we hold, further held that even if the circumstances justified a constructive trust, the court could not impose one because its effect would be to enforce an illegal agreement in violation of the public policy of this state. The trial court then denied by separate order a petition to amend by holding that there was no agreement between the parties. We reverse and remand as to both orders.

ISSUES
The dispositive issues of this case are whether (1) a confidential relationship existed between Mr. and Mrs. Chapman, (2) Mr. Chapman made and left in existence his will containing *473 the marital trust as a result of a trust reposed in Mrs. Chapman arising from a confidential relationship between Mr. and Mrs. Chapman and a promise by Mrs. Chapman that she would not exercise the power of appointment contained in Mr. Chapman's last will or in the alternative during her lifetime make gifts of the subject property to Mr. Chapman's children, (3) the trial judge erred in failing to impose a constructive trust on the marital trust were in order, the court could not impose the constructive trust because this would violate public policy and the law.

FACTS[1]
In 1948 Robert H. Chapman (Mr. Chapman), a widower, married Laura Noell Carr (Mrs. Chapman), a widow of Durham, North Carolina. At the time of his second marriage, he had two adult children, Robert H. Chapman, Jr. and Elizabeth Chapman Means. Mrs. Chapman had two adult sons by her prior marriage, Austin Heaton Carr and Charles Noell Carr. Upon their marriage, Mrs. Chapman moved to Spartanburg to live in Mr. Chapman's home. This was the only home they occupied during the remainder of their lives. At the time of their marriage, Mr. Chapman was an executive at Inman Mills. Inman Mills was founded by Mr. Chapman's father and was family owned.
Elizabeth Chapman married T. Sam Means, Jr. They had two daughters, Sally Means Quantz and Alice Means Ballenger. Elizabeth Means died in 1973. Robert H. Chapman, Jr., Mrs. Quantz and Mrs. Ballenger are the beneficial plaintiffs in this action.
Mrs. Chapman was wealthy in her own right. Her first husband had established a trust administered by the Durham Bank and Trust Company (later the Central Carolina Bank and Trust Company) in Durham, North Carolina (Durham Bank). There is evidence of record that on March 10, 1966, this trust had a value of $170,000. On September 19, 1961, *474 Mrs. Chapman set up a revocable trust in favor of herself for life and at her death to her children by her prior marriage to be administered by the Durham Bank. The record reflects that this trust had an asset value of $590,000 on March 10, 1966. Mr. Chapman paid the income taxes for Mrs. Chapman on the income from these trusts until shortly before his death.
In 1949, 1954 and 1955 Mr. Chapman made wills which in effect created a life income for Mrs. Chapman from part of his estate with remainder to his two children. Mr. Chapman's last will was executed on December 19, 1958, some ten years after his second marriage. In this will Mr. Chapman devised his home and furniture to Mrs. Chapman and established a marital trust in the subject property. The trust provided that Mrs. Chapman have a life estate in the corpus with the right of having the corpus transferred to her and a power of appointment upon her death, but should she fail to exercise the power of appointment, the subject property would then pass to Mr. Chapman's children, the child or children of deceased child to take his parents share.[2]
There are numerous letters of record which establish that Mrs. Chapman promised[3] Mr. Chapman that, upon Mr. Chapman's death and the probate of his will, Mrs. Chapman would either during her lifetime make gifts of the subject property to Mr. Chapman's children or die without exercising the power of appointment contained in Mr. Chapman's will.
The record reflects that Mr. and Mrs. Chapman had a loving relationship. The record also reflects, without detail, that Mr. Chapman became very ill in about 1967 at which time around-the-clock nurses were employed. Nurse Nesbit testified that she worked for Mr. Chapman for 7 or 8 years until *475 he died in 1975, and that during this period, there were numerous employees at the Chapman home including a cook, a maid, two yard men, a butler and three graduate nurses.
The record establishes that beginning in 1962, Mrs. Chapman executed wills devising all of her property to her own children, but, consistent with her promise to Mr. Chapman, she devised the subject property to Mr. Chapman's children with the provision that all federal and state estate or inheritance taxes which her estate would have to pay by reason of the inclusion of the subject property in her estate would be paid from the subject property. In a letter to Robert F. Chapman, her then attorney and the nephew of her husband, Mrs. Chapman wrote that it was her hope and intent to give as much of the marital trust as conditions would allow directly to Mr. Chapman's issue. This hope and desire lasted until Mr. Chapman's death but about a year after Mr. Chapman's death, she underwent a change of mind.
The record establishes by letters in Mrs. Chapman's own handwriting that about a year after Mr. Chapman's death she began "struggling with her conscience" about whether she should leave the subject property to her own children rather than Mr. Chapman's children. On August 15, 1977, Mrs. Chapman executed a new will. The basic change in the new will was that she appointed the assets in the marital trust established by Mr. Chapman to her own sons, Austin and Noell Carr. None of the marital trust assets went to the children or issue of Mr. Chapman. This new will was drawn by attorney Bernelle Demo who had not previously worked for Mrs. Chapman.
Mrs. Chapman died on May 8, 1986, and was buried in Durham, North Carolina.

DISCUSSION

I.
We hold there was a confidential relationship existing between Mr. and Mrs. Chapman when Mr. Chapman executed his last will and until his death.
Although a precise definition of a confidential relationship is elusive, a thorough review of available material left us impressed with the definition found in Black's Law Dictionary 270 (5th Ed. 1979):

*476 Confidential relation. A fiduciary relation. It is a peculiar relation which exists between client and attorney, principal and agent, principal and surety, landlord and tenant, parent and child, guardian and ward, ancestor and heir, husband and wife, trustee and cestui que trust, executors or administrators and creditors, legatees, or distributees, appointor and appointee under powers, and partners and part owners. In these and like cases, the law, in order to prevent undue advantage from the unlimited confidence or sense of duty which the relation naturally creates, requires the utmost degree of good faith in all transactions between the parties. It is not confined to any specific association of parties. It appears when the circumstances make it certain that the parties do not deal on equal terms, but on the one side there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed. The mere existence of kinship does not, of itself, give rise to such relation. It covers every form of relation between parties wherein confidence is reposed by one in another, and former relies and acts upon representations of the other and is guilty of no derelictions on his own part. Peckham v. Johnson, Tex. Civ. App., 98 S.W. (2d) 408, 416. [Emphasis ours.]
Confidential relations are deemed to arise whenever two persons have come into such a relation that confidence is necessarily reposed by one and the influence which naturally grows out of the confidence is possessed by the other, and this confidence is abused or the influence is exerted to obtain an advantage at expense of confiding party. Ruebsamen v. Maddocks, Me., 340 A. (2d) 31, 34.
Our Supreme Court in All v. Prillaman, supra, held that persons in a familial relationship such as a husband and wife are ordinarily to be regarded as in a confidential relationship within the meaning of the rule. The court, however, held that this is not necessarily so. Our study reveals that even in a husband and wife relationship, which may be the most intimate of all, the one in whom the trust or confidence is reposed must possess the power to abuse the trust of the confiding party in his business affairs to the detriment of the confiding *477 party. This power to abuse, for the benefit of himself or herself, a trust reposed in a spouse, in the eyes of the law, invests that spouse with a dominance in the relationship.
Stated differently, a confidential or fiduciary relationship exists when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one reposing the confidence. SSI Medical Services, Inc. v. Cox, 301 S.C. 493, 392 S.E. (2d) 789 (1990).
Under the above authorities, we hold that when a husband or wife reposes in the other a trust to do or not do an act relating to the corpus of his estate after his or her death a confidential relationship shall be deemed to have existed if the one in whom the confidence is reposed has the power to abuse the confidence to his or her own advantage. This is the exact situation before us. We might add again that Mrs. Chapman intended, hoped and wanted to abide by the trust reposed in her and the promise she had made until the death of Mr. Chapman. After Mr. Chapman's death, of course, Mrs. Chapman had absolute dominance over this trust which had been reposed in her. She violated the trust and promise to the benefit of her own children.
We hold for the above reasons that a confidential relationship existed between Mr. and Mrs. Chapman.

II.
The question is whether Mr. Chapman made and left in existence his will containing the marital trust as a result of a trust reposed in Mrs. Chapman arising from a confidential relationship between Mr. and Mrs. Chapman and in reliance on a promise by Mrs. Chapman that she would not exercise the power of appointment contained in Mr. Chapman's last will. We have held that (1) the preponderance of the evidence of record establishes that a confidential relationship existed between Mr. and Mrs. Chapman, (2) as a result thereof Mr. Chapman did repose in Mrs. Chapman his trust that she would not exercise the power of appointment contained in his will and (3) the preponderance of the evidence establishes that Mr. Chapman made his last will and testament and left it in existence until his death in reliance on Mrs. Chapman's promise that she would not exercise the power of *478 appointment contained in Mr. Chapman's will thereby allowing the subject property to pass to Mr. Chapman's son and the issue of his deceased daughter.
These holdings are based upon the undisputed evidence that Mrs. Chapman agreed to either give the subject property to Mr. Chapman's children during her lifetime or, in the alternative, not exercise the power of appointment. It is also undisputed that Mr. Chapman hoped and expected her to do so.

III.
Having held that a confidential relationship existed between Mr. and Mrs. Chapman and further that Mrs. Chapman promised Mr. Chapman that she would not exercise the power of appointment contained in his will, the clear and convincing evidence of record establishes that she abused the trust reposed in her, violated her fiduciary duty and broke the promise she made to her late husband, Mr. Chapman. Under these circumstances, we hold that an obligation is imposed upon this court, a court of equity in this case, to impose a constructive trust upon the subject property.
In the limited situation of this case involving the breach of a confidential relationship by Mrs. Chapman and her promise to Mr. Chapman that she would not exercise the power of appointment contained in his will, we apply the following law:
The most common case of the type under discussion is that where A makes a will in favor of B, or leaves a will previously made in favor of B in effect, on the basis of an oral promise by B to use the gift property for the benefit of C. A dies leaving the will in effect and B acquires the property but refuses to recognize any rights in C. It is assumed that at the time B made the promise he intended to perform it, and that this honest state of mind continued until the death of A. The courts are nearly unanimous in holding B a constructive trustee for C, giving as reasons that A relied on B's promise, that the operation of the Wills Act is not obstructed or interfered with since title passes to B as stated in the will, but that equity acts on B's title after the will has given it to him, *479 and that this result is necessary in order to prevent "fraud." "Trusts, in cases of this character, are impressed on the ground of fraud, actual or constructive, and the basis or ground upon which fraud is imputed is that of holding the estate of testator against conscience." The court here uses "fraud" as meaning generally reprehensible conduct and not as indicating misrepresentation of fact. [Emphasis ours.]
The promise of B may be express or implied. Silence by B when directly informed by A of his intent that B shall hold for C amounts to a promise.
Proof of reliance by A on the promise of B is needed. If it appears that A would have given the property to B even if B had not acquiesced in A's statement of his desires, there is no case for a trust for C. A's intent to have C benefited must have been expressed to B before A's death, agreed to by B, and been an inducement for leaving the will in effect or for making it originally. [Emphasis ours.]
Bogert, Trusts § 89 (6th ed. 1987). See 155 A.L.R. 106 (1945). Stuckey v. Truett, 124 S.C. 122, 117 S.E. 192 (1923) (Cothran, J. concurring.)
Restatement of Restitution 186(1) (1937) is to the same effect:
Where a testator devises or bequeaths property to a person relying upon his agreement to hold the property in trust for or to convey it to a third person, the devisee or legatee holds the property upon a constructive trust for the third person.
As noted above, Mrs. Chapman struggled with her conscience between providing for her children and honoring the agreement she made with her late husband. The responsibility she felt to her children is to be expected, but it does not vitiate or excuse the responsibility she owed Mr. Chapman by way of the trust he reposed in her. When matters of the conscience are decided improvidently, equity stands ready to rectify. The abuse of a confidential relationship is recognized by our Supreme Court as the basis of the imposition of a constructive trust by a court of equity. Lollis v. Lollis, 291 S.C. 525, 354 S.E. (2d) 559, 561 (1987).
*480 A constructive trust arises entirely by operation of law without reference to any actual or supposed intentions of creating a trust. A constructive trust arises whenever a party has obtained money which does not equitably belong to him or has been acquired through a breach of trust or the violation of a fiduciary duty. SSI Medical Services, Inc. v. Cox, supra.
For the above reasons, this court imposes a constructive trust in favor of the plaintiffs in the proportion set forth in Mr. Chapman's will of the marital trust funds, subject to the obligation of paying the inheritance tax due on said funds.
The reliance of the appealed order on the case of All v. Prillaman, is misplaced. There it was specifically found that no confidential relationship existed and all rules of law relied upon by the appealed order are specifically declared to be inapplicable when a confidential relationship is abused.

IV.
We also reverse the appealed order's findings that to impose a constructive trust on the marital trust funds would be in violation of law and public policy. The implication of the trial judge's ruling is that Mr. Chapman by his will and the attendant circumstances was guilty of tax fraud, a crime necessitating criminal intent. The clear and convicting evidence of record is that Mr. Chapman and Mrs. Chapman enjoyed a loving relationship in which Mr. Chapman helped to build Mrs. Chapman's separate estate. We find that the clear and convincing evidence of record also establishes that until Mr. Chapman's death, Mrs. Chapman hoped to and wanted to pass the marital trust funds to Mr. Chapman's own children although she knew she was not legally bound to do so. We also find that the clear and convincing evidence of record establishes that neither Mr. Chapman nor Mrs. Chapman at any time prior to Mr. Chapman's death and the probate of his will acted with any fraudulent intent or purpose. The record is clear that in making the will they conferred with counsel. It is important, at this point, to emphasize that if Mrs. Chapman had remained loyal to the trust reposed in her, which was in accord with her own desire and hope, no one could suggest that there had been a violation of either law or public policy because this is what she wanted to do. It *481 was only after Mr. Chapman's death that Mrs. Chapman underwent a change of heart, struggled with her conscience, and then violated the trust which had been reposed in her and the promise she had made.
Our holding is in accord with the case of Platt v. Wells Fargo Bank Am. Trust Co., 222 Cal. App. (2d) 658, 35 Cal. Rptr. 377 (1963) cert denied 377 U.S. 965, 84 S.Ct. 1646, 12 L. Ed. (2d) 736 (1964). There the wife owned certain corporate stock she had inherited from her father and she wanted it to go to her nephew and his children to keep it in the "Platt Blood Line." To utilize the marital tax deduction, she left one-half her estate to her husband through her Will. This was done with the assurance from her husband that he would carry out her wishes with regard to the stock going to her nephew. Her husband survived her and filed the marital deduction claim as one of the co-executors of her estate. Thereafter, when he declined to honor his wife's wishes, the nephew and his children instituted an action to impress a trust upon the stock. The husband resisted the action alleging that the agreement was "illegal and unenforceable since the sole purpose thereof was the unlawful and fraudulent evasion of federal estate taxes." The California Court impressed a trust upon the stock, saying:
There is no doubt that the objective of the parties in entering into the agreement was to obtain the marital tax deduction, while still carrying out Mrs. Pendleton's wishes with respect to the disposition of the Folger stock. As an abstract matter, this is not an illegal objective.

* * * * * *
In all of her prior Wills and in her discussions concerning her estate, she had made it evident that this wish was uppermost in her mind.... Pendleton knew that his wife was dying of cancer and that she trusted him to carry out her wishes. For a period of years after her death he did so. The repudiation came later.
There are striking parallels between the facts of the Platt case and the instant case. "There is no doubt that the objective" of Mr. and Mrs. Chapman "in entering into the agreement *482 was to obtain the marital tax deduction while still carrying out" Mr. Chapman's wishes that his property would go to his children. That was "not an illegal objective." Mrs. Chapman knew that her husband was in failing health and, as it developed, he was in a terminal situation. He trusted her to carry out his wishes, then Mrs. Chapman's wishes. "For a period of [two] years after [his] death [she] did so. The repudiation came later." Id.
Moreover, a constructive trust arises by operation of 18, 19 law, not from the intention of the trustee to assume a fiduciary duty. See SSI Medical Services, Inc. v. Cox, supra. The invoking of a trust is not enforcing the contract but is invoking equitable relief from a fraud or breach of confidence. Because of these rules, a constructive trust may be invoked even though the agreement out of which it arose is not legally enforceable. H-B Ltd. Partnership v. Wimmer, 220 Va. 176, 257 S.E. (2d) 770 (1979).
An interesting aspect of the cases in which courts have applied a constructive trust to property or rights to property is that the defendant almost always raises a contention that the agreement should not be enforced because it violates public policy or some statutory prohibition, or is illegal. In those cases the defendant does not assert the defendant's statutory rights or the defendant's legal or equitable rights. It is an attempt at a technical avoidance which rests upon an asserted public policy or illegality of some kind. The courts have refused to accept this ruse because to do so would be to compound the defendant's wrong. In those instances, as here, the defendant is really attempting to assert, not a public policy but a "private policy" to insulate the defendant from his own wrong. Equity does not permit a defendant to defeat justice by such a ploy. See Trustees of Amherst College v. Ritch, 151 N.Y. 282, 45 N.E. 876 (1897); Hayes v. Magnus-Cutler, Inc., 41 Misc. (2d) 420, 245 N.Y.S. (2d) 632 (1963); Sweeney v. KANS, Inc., 247 Cal. App. (2d) 475, 55 Cal. Rptr. 673 (1966); Hines v. Norcott, 176 N.C. 123, 96 S.E. 899 (1918); Price v. Edwards, 178 N.C. 493, 101 S.E. 33 (1919); Marriott Financial Services, Inc. v. Capitol Funds, Inc., 288 N.C. 122, 217 S.E. (2d) 551, (1975); H-B Ltd. Partnership v. Wimmer, supra; Fairly v. Wappoo Mills, 44 S.C. 227, 22 S.E. 108 (1895); Simmons v. Calloway, 138 Miss. 669, 103 So. 350 *483 (1925); Welles v. Revercomb, 189 Va. 777, 54 S.E. (2d) 878 (1949); Packard & Field v. Byrd, 73 S.C. 1, 51 S.E. 678 (1905); Walter A. Wood M. & R. Co. v. Greenwood Hardware Co., 75 S.C. 378, 55 S.E. 973 (1906); Ex parte Rosenfeld, 214 S.C. 39, 51 S.E. (2d) 88 (1948); Romanus v. Biggs, 214 S.C. 145, 51 S.E. (2d) 503 (1949); Higgins v. Normile, 130 A.D. (2d) 828, 515 N.Y.S. (2d) 148 (1987); and Platt v. Wells Fargo Bank, supra.
The reliance of the appealed order on the case of Frederick v. Frederick, 44 Ill. App. (3d) 578, 3 Ill. Dec. 231, 358 N.E. (2d) 398 (1976) is misplaced. There the parties had entered into a pre-nuptial contract. This decision is not based upon contract, but the imposition of a constructive trust resulting from a confidence reposed by a husband in his wife, who promised him that she would not exercise the martial trust and thereby cause the corpus of the marital trust to pass to the husband's children. Accordingly, we hold that this court is under no restraint in imposing a constructive trust on the marital trust funds because of the confidential relationship existing between Mr. and Mrs. Chapman and the violation by Mrs. Chapman, after her husband's death, of the trust reposed in her and the promise she had made.

CONCLUSION
We find that Mrs. Chapman promised Mr. Chapman that she would not exercise the power of appointment contained in the marital trust established by his will. We further hold that a confidential relationship existed between Mr. and Mrs. Chapman in which he reposed in her the trust that she would not exercise the power of appointment contained in the marital trust and that Mrs. Chapman abused the confidential relationship by exercising the power of appointment to the benefit of her own children.
We adopt the rule relating to this situation set forth by Professor Bogert in Bogert, Trusts § 89 (6th ed. 1987).
For the reasons given, this court imposes a constructive trust in favor of the plaintiffs Robert H. Chapman, Jr., Sally Quantz and Alice Ballenger in the proportion set forth in Mr. Chapman's will on the corpus of the marital trust contained in the will.
We further hold that the trial judge erred in failing to hold that a confidential relationship existed between Mr. and Mrs. *484 Chapman and that Mrs. Chapman abused this confidential relationship and broke the promise she had made to Mr. Chapman that she would not exercise the power of appointment. We further hold that the trial judge erred in not imposing a constructive trust on the corpus of the marital trust in favor of the plaintiffs in this case.
For the reasons given, the appealed orders are reversed and the case in remanded with instructions to enter judgment in accordance with this decision.
Reversed and remanded.
BELL and CURETON, JJ., concur.
NOTES
[1] In matters of equity, tried by a single judge below, we are free to make factual findings in accord with our own view of the evidence. Townes Assoc., Ltd. v. City of Greenville, 266 S.C. 81, 221 S.E. (2d) 773 (1976).
[2] This trust was set up in order to comply with the then existing state and inheritance tax laws which permitted a spouse to give or devise without taxation one-half of his estate to his wife. In the alternative, the spouse could devise or set up by trust a life estate to the surviving spouse with a power of appointment that is exercisable by such spouse alone and in all events.
[3] Specifically, Mrs. Chapman's letters state that she was expected either to make gifts of the marital trust to Mr. Chapman's children during her lifetime or in the alternative not exercise the power of appointment at her death. Mrs. Chapman specifically admits that she agreed to this at the time Mr. Chapman made his will and until his death. We hold as a matter of fact that these words are tantamount to a promise.