**In re Peter D. LaPIERRE and Cecilia E. LaPierre, Debtors.**

**AETNA LIFE & CASUALTY COMPANY, Plaintiff,**

v.

**Cecilia E. LaPIERRE, Defendant.**

**Bankruptcy No. 90–1554.
Adv. No. 94–8005.**

United States Bankruptcy Court,
D. South Carolina.

Dec. 30, 1994.

James R. Allen, Columbia, SC, for Aetna Life & Cas. Co.

Thomas M. Fryar, Columbia, SC, for Cecilia E. LaPierre.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon an adversarial proceeding filed by Aetna Life & Casualty Company ("Aetna") seeking a determination as to whether it is entitled to a recoupment of pre-petition overpayments under a disability insurance policy from post-petition payments to one of the joint debtors, Cecilia E. LaPierre ("LaPierre"), and if so, what is the amount subject to that recoupment.

In this proceeding, Aetna takes the position that according to the disability insurance policy and related Reimbursement Agreement, it is entitled to reduce the payments made to the defendant because of an award of the Social Security Administration in favor of the defendant on August 28, 1983. Aetna asserts that it did not know of the award until September of 1991, due to the defendant's failure to disclose the existence of the award.

LaPierre disputes that Aetna was unaware of the award of the Social Security Administration and takes the position that Aetna's action against her is a set-off rather than a recoupment of the debt and further that any indebtedness she may owe Aetna was previously discharged in her bankruptcy case. Alternatively, LaPierre takes the position that if the debt has not been discharged, that the amount owed to Aetna is in a lesser amount than that claimed by Aetna. LaPierre also takes the position that the actions of Aetna in reducing post-petition payments are in violation of the stays or injunctions imposed by 11 U.S.C. § 362(a), 524(a) and 727[1] and she is therefore entitled to appropriate damages.

After careful consideration of the evidence; consisting of various letters and memoranda,

the Reimbursement Agreement of July 2, 1982, the Social Security Disability Award Certificates, the Aetna Group Disability Policy of February 2, 1978 ("the LTD Policy"), the joint Chapter 7 Petition, Schedules and Statements and the testimony of the witnesses, Cecilia La Pierre and Kathryn Bullock ("Bullock"), an employee of Aetna, the Court makes the following Statement of Facts and Conclusions of Law.

## STATEMENT OF FACTS

1. LaPierre was an employee of Polaroid Corporation and was covered by a Group Long Term Disability Insurance Policy ("the LTD Policy") issued by Aetna for the benefit of the employees of Polaroid Corporation ("Polaroid").

2. The LTD Policy provides certain set monthly benefits payable to employees in the event of disability. The amount of benefits could be reduced in the event an employee became eligible for Social Security benefits or increased in the event Polaroid funded a higher level of benefits.

3. Section 2 of Article II of the LTD Policy provides in part that "The amount of monthly benefit payable under this policy for a given monthly period of total disability shall be 65% of the employee's monthly rate of basic earnings if no other income benefits are payable for the given monthly period. If other income benefits are payable for a given monthly period, the amount of monthly benefit payable under this policy for the given monthly period shall be an amount equal to the excess, if any, of (i) 65% of the employee's monthly rate of basic earnings over (ii) the amount of other income benefits payable for the given monthly period; provided, however, that the amount of any payments under the Federal Social Security Act, or any Canadian Act or Acts of similar purpose, to which the employee's spouse, children, and dependents are entitled on account of the em-

1. Further references to the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*) shall be by section number only.

ployee's retirement or disability, shall be considered an 'other income benefit' only to the extent that the total of such payments in the given monthly period exceeds 10% of the employee's monthly rate of basic earnings".

4. Section 6 of Article VI of the LTD Policy provides in part that "[t]he Insurance Company shall have the right to require as part of the proof of claim satisfaction evidence (1) that the employee, spouse, child, or dependant has made application (and has, within a reasonable length of time following denial of such benefits, made reapplication) for all other income benefits referred to in Section of 2 of Article II, (2) that he has furnished all required proofs of such benefits, (3) that he has not subsequently waived such benefits, and (4) of the amount of all such benefits payable."

5. Section 8 of Article VI of the LTD Policy provides that "[i]n the event that an employee receives a monthly benefit payment under this policy which is in excess of the monthly benefit payment which should have been made, the Insurance Company shall have the right to recover the amount of such excess from the employee. The Insurance Company may, however, at its option, deduct the amount of such excess from any subsequent monthly benefits payable to the employee".

6. As contemplated in the LTD Policy, LaPierre entered into an individual Reimbursement Agreement with Aetna on July 2, 1982, which also provided for reimbursement by the employee if overpaid under the terms of the LTD Policy.

7. LaPierre became disabled and left her employment at Polaroid on or about June 24, 1981, making her eligible for disability payments under the LTD Policy. On May 27, 1982, Aetna advised LaPierre of the approval of her long term disability benefits and informed her of the need to apply for Social Security and if denied, to appeal the denial. Except for the initial letter of June 23, 1982 from Polaroid informing LaPierre that her claim was approved and form letters to the "Long

Term Disability Members or Recipients" advising the members that Polaroid had funded a higher level of benefits, all other correspondence submitted to the Court concerning the benefits and payments was between LaPierre, Aetna and their attorneys or representatives.

8. LaPierre began receiving payments under the LTD Policy from Aetna on June 25, 1982. Between June 25, 1982 and December 31, 1986, LaPierre received $39,081.45 representing monthly payments of $721.06. LaPierre received an additional $45,204.42 in payments between January 1, 1987 and September 30, 1991 representing payments of $793.06 per month. Polaroid funded a higher level of benefits effective January 1, 1994 which would result in an approximate payment to LaPierre of $888.23 per month.

9. Aetna reduced the disability payment to LaPierre on April 24, 1992, effective retroactively to October 1, 1991.

10. LaPierre was notified by the Social Security Administration on August 28, 1983 that she was eligible for Social Security benefits retroactive to December of 1981.

11. Aetna was informed by LaPierre in September of 1991 that she was receiving Social Security benefits.

12. Aetna sent correspondence to LaPierre requesting information about her Social Security Award, if any, on July 25, 1990, February 6, 1991, June 19, 1991, September 19, 1991, October 4, 1991, January 10, 1992, April 24, 1992 and February 17, 1993.

13. LaPierre filed a joint Chapter 7 petition with her husband Peter D. LaPierre on April 20, 1990. LaPierre was granted a discharge on June 30, 1990.

14. On May 6, 1992, pursuant to Order of this Court, the debtor's joint Chapter 7 was reopened to add Aetna as an unsecured creditor. On June 5, 1992, the debtors amended their previously filed schedules by adding Aetna as a creditor. The Chapter 7 was reclosed on August 19, 1992.

15. On February 17, 1993, Aetna demanded the payment of $66,815.76 for an alleged overpayment of benefits from LaPierre.

16. Aetna ceased making payments to LaPierre as of October 1, 1993, applying all payments otherwise due to the alleged over-payment rather than delivering them to LaPierre.

17. The joint Chapter 7 case was again reopened by Order of this Court on December 13, 1993 pursuant to motion of Aetna for a determination of the issue of recoupment on the part of Aetna.

### DISCUSSION AND CONCLUSIONS OF LAW

#### i. Set-off versus Recoupment

■ The first issue that the Court must address is whether the action of Aetna against the pre-petition over-payment to the debtor is in the nature of a "set-off" and subject to the automatic stay and discharge provisions of § 362, § 553(a) [2] and § 727 or if the actions are in the nature of a "recoupment" and therefore not subject to the automatic stay or discharge provisions of the Bankruptcy Code.

Two recent decisions, one from the Northern District of Georgia and one from the District of New Jersey, with facts very similar to the facts within, have offered guidance in differentiating between a "set-off" and the right of "recoupment". The *Izaguirre* opinion from the Northern District of Georgia states that "Recoupment is defined in Black's Law Dictionary (6th ed. 1990) as '[t]he right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to plaintiff's claim.' A party may not use recoupment to recover damages from the other party but only to reduce a liability that would otherwise be owed to the other party." *In re Izaguirre*, 166 B.R. 484 (N.D.Ga.1994). The New Jersey Bankruptcy Court in the *Hiler* opinion held that

> Setoff involves a mutuality of obligation which arises from separate transactions. *In re Heafitz*, 85 B.R. 274, 278 (Bkrtcy. S.D.N.Y.1988) (citations omitted). Recoupment, on the other hand, does not require a mutuality of obligation, but rather countervailing claims or demands arising our of the same transaction under which the initial claim was asserted. *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427, 432 (Bkrtcy.S.D.N.Y.1982) (citation omitted). Essentially, the distinction between the two doctrines is whether the claim arises out of the same or different transactions."

*In re Hiler*, 99 B.R. 238, 243 (Bankr.D.N.J. 1989) citing *Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir.1984).

■ "A 'set-off' is a demand which the defendant has against the plaintiff, arising out of a transaction extrinsic to the plaintiff's cause of action, whereas a "recoupment" is a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction." Black's Law Dictionary—5th Ed. citing *Zweck v. D P Way Corp.*, 70 Wis.2d 426, 234 N.W.2d 921, 924. Recoupment, which originated as an equitable rule of joinder, arises when a debtor and a creditor have claims against each other that arise out of the same transaction. *In re B & L Oil Co.*, 782 F.2d 155 (10th Cir.1986). It is distinguishable from set-off, which arises when the

---

**2.** Section 553(a) provides:

(a) Except as otherwise provided in this section and in section s 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

(2) such claim was transferred, by an entity other than the debtor, to such creditor—
(A) after the commencement of the case; or
(B)(i) after 90 days before the date of the filing of the petition; and
(ii) while the debtor was insolvent; or
(3) the debtor owed to the debtor by such creditor was incurred by such creditor—
(A) after 90 days before the date of the filing of the petition;
(B) while the debtor was insolvent; and
(C) for the purpose of obtaining a right of set-off against the debtor.

debtor's and creditor's claims against each other arise out of separate transactions. *See generally 4 Collier on Bankruptcy* § 553.03 (15th ed. 1994).

■ The importance of this distinction is that a set-off is limited to the terms of § 553, and is therefore subject to the automatic stay provisions of § 362 while recoupment is not. "Recoupment has some of the characteristics of set-off. Setoff and recoupment have a common origin and are equitable in nature, but the two doctrines are distinguishable and are treated differently in the bankruptcy context. While the Bankruptcy Code speaks directly about set-off in sections 362(a) and 553, the Code is silent about the doctrine of recoupment." *In re Izaguirre,* 166 B.R. at 490.

This Court has recognized the right of recoupment in bankruptcy adversarial proceedings. *Gloria Thomas v. South Carolina Electric & Gas Company (In re Gloria Thomas),* 91–01677, 91–8086 (Bankr.D.S.C. 9/20/91) (JBD). In the *Thomas* decision, this Court in citing the *Brooks Shoe* opinion of the Eastern District of Pennsylvania stated:

> [The situation here] is more nearly akin to recoupment, which is plainly permitted by the Bankruptcy Code. That is, the distinction is between truly independent debts, which give rise to set-off rights, and reciprocal obligations arising from the same transaction or series of transactions, which give rise to recoupment. As noted in *4 Collier on Bankruptcy,* (15th Ed.), § 555.03, at p. 553–12:

> > Recoupment, on the other hand, is the setting up of a demand arising from the *same transaction* as plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim . . . Certainly in any suit for action between the estate and another, the defendant should be entitled to show that because of matters arising out of the transaction sued on, he is not liable in full for the plaintiff's claim. There is no element of preference here or of an independent claim to be offset, but merely an arrival at a just and proper liability on the main issue, and this would seem

permissible without any reference to former § 68 or to § 553(a).

*Brooks Shoe v. United Tel. Co.,* 39 B.R. 980 (E.D.Pa.1984).

The underlying rationale for recoupment is analogous to the concept of executory contracts under § 365. A debtor can not assume portions of a contract she likes (the payment stream) and reject other portions (repayment). *In re Hiler,* 99 B.R. 238, 243 (Bankr.D.N.J.1989).

As stated in the Findings of Fact, the contract between Polaroid and Aetna was a single contract of Long Term Disability insurance covering Polaroid's eligible employees. The relationship between LaPierre and Aetna is defined by the LTD Policy. La-Pierre's right to receive payments is dictated by the LTD Policy and Aetna's right of recoupment of its pre-petition over-payments to LaPierre is reserved by Aetna in the LTD Policy and the Reimbursement Agreement of July 2, 1982. This Court finds that the disability payments to LaPierre and her resulting obligation to reimburse any over-payments arise out of the LTD Policy and are reciprocal obligations arising from the same transaction. Therefore the action taken by Aetna is in the nature of a recoupment rather than a set-off.

■ In this case, LaPierre relies upon the 8th Circuit opinion of *Bush v. Taylor,* 912 F.2d 989 (8th Cir.1990) for the proposition that the claim of Aetna is one of set-off and not recoupment. In *Bush,* the Court held that each of a series of alimony payments was a separate transaction, and therefore set-off and not recoupment was applicable. *Bush* is distinguishable on several grounds. Crucial to the decision in *Bush* was a finding that the debtor was a constructive trustee of the funds which should have been passed on to his ex-spouse as alimony. Here, there is no relationship which could result in a constructive trust. To create a constructive trust, one must have:

1. a fiduciary relationship with the party for whom the "trust" is held,
2. abuse of that relationship, and
3. unjust enrichment by continuing to hold the property in question.

*Chapman v. Citizens & Southern National Bank,* 302 S.C. 469, 395 S.E.2d 446 (Ct.App. 1990).

■ In order to have a fiduciary relationship, one party must repose special confidence in another so that the latter party is bound to act in good faith and with due regard to the interest of the former. *Chapman*, 395 S.C. at 451, 395 S.E.2d 446. No evidence was presented to this Court to support LaPierre's position that there was a fiduciary relationship between her and Aetna. The relationship between Aetna and LaPierre is merely contractual in nature and does not rise to the level of a fiduciary relationship and therefore LaPierre's reliance on *Bush* is misplaced and incorrect.

### ii. Dischargeability of Debt

■ The next issues that must be addressed are whether the recoupment by Aetna is subject to the automatic stay provisions of § 362 and whether the pre-petition debt owed to Aetna based upon the over-payment has been discharged in LaPierre's bankruptcy and controlled by the post-discharge injunction of § 727. *In re Hiler*, 99 B.R. 238, 243 (Bankr.D.N.J.1989) is virtually on point to the circumstances within. In *Hiler*, Hoffman–LaRoche took out a disability insurance policy for the benefit of the debtor, George Hiler. After Hiler qualified for the plan, Hoffman–LaRoche began making payments to him. Hiler was paid the full benefits amount less the amount of Social Security benefits he was expected to receive once he qualified for Social Security. At Hiler's request, the automatic deduction for anticipated benefits was stopped with the understanding that any resulting over-payment would have to be re-paid by Hiler. In keeping with the contract's terms, Hiler's obligation to report any newly acquired Social Security benefits was still in effect. Hiler, however, began collecting such benefits but did not notify Hoffman–LaRoche. When Hoffman–LaRoche requested repayment for the amounts it had overpaid Hiler, he declared bankruptcy. The Court held that the plan's pre-petition over-payment could be recouped from post-petition payments, was not subject to the stay, and was not dischargeable.

Similarly, LaPierre collected payments from both Aetna and the Social Security Administration without timely informing Aetna of the Social Security Award as provided for in the LTD Policy and Reimbursement Agreement. Similar to the action of Hoffman–LaRoche, Aetna also seeks to recoup its pre-petition over-payment.

This court has previously recognized and agreed with the reasoning of *Hiler* for the proposition that "funds subject to recoupment are not protected by the Section 362 stay." *Gloria Thomas v. South Carolina Electric & Gas Company (In re Gloria Thomas)*, 91–01677, 91–8086 (Bankr.D.S.C. 9/20/91) (JBD). In the *Thomas* decision, this Court in citing the *First Nat'l Bank v. Master Auto Service Corp.*, 693 F.2d 308 (4th Cir.1982) opinion held "*In re Career Consultants*, 84 B.R. 419 (Bankr.E.D.Va.1988), reiterated the principal that a debtor's filing for relief under the Bankruptcy Code does not affect a creditor's right to recoup damages arising pre-petition out of a single transaction or series of transactions. The court found that the automatic stay does not apply to property or funds not part of the estate. Accordingly, the court held that the stay could not apply to recoupment since Section 541 does not include property subject to recoupment in the property of the estate." Id. at page 12. For the foregoing reasons, it is the opinion of this Court that the actions of Aetna are not stayed by § 362.

■ LaPierre relies upon the 7th Circuit decision of *Matter of Neavear*, 674 F.2d 1201 (7th Cir.1982) for the proposition that the claim of Aetna is fully discharged pursuant to § 727. "The underlying basis of the courts' opinions in these cases is that social security over-payment is not listed in § 523 as debts not subject to discharge and thus, the debts are dischargeable." *Baker v. U.S. Through U.S. Dept. of Labor*, 100 B.R. 80 (M.D.Fla. 1989) citing *Matter of Neavear*, supra. The *Neavear* and *Baker* decisions involved the over-payment of FECA and Social Security benefits. The Court in Baker relying on the 3rd Circuit opinion of *Lee v. Schweiker*, 739 F.2d 870 (3rd Cir.1984) reasoned that there is a fundamental difference between a recoupment of an over-payment of a Social Security award as compared to a private contract. "In *Lee*, the Court reviewed cases holding that a social welfare statute entitling an individual to benefits is not a contract, and thus an obligation to repay a previous over-payment is a separate debt subject to the

rules of bankruptcy. *Lee,* 739 F.2d at 876. The *Lee* Court agreed with the reasoning of these cases in finding that social security payments are statutory entitlement rather than contractual rights." *Baker,* 100 B.R. at 84. In the within proceeding, Aetna is a private insurance company which entered into a contract to provide disability insurance to LaPierre's employer. The same public policy considerations that are present in cases considering the recoupment of an over-payment of a Social Security Award are not present in the within proceeding.

This Court agrees with the analysis in *Thomas* and *Hiler* that the amounts sought to be recouped by Aetna in this situation is not dischargeable nor is the action taken by Aetna to recoup subject to the post-discharge injunction of § 727.

### iii. Waiver

█ LaPierre next asserts that Aetna knew of her Social Security Award and due to its inaction, waived any right to recoupment or set-off against her. LaPierre testified that she mailed the Social Security Award Certificate to Aetna in 1983, or in the alternative that Aetna is an agent of Polaroid and that Polaroid's notice of the Social Security Award is imputable to Aetna. In either case, she argues that Aetna waived its right to recoup the over-payment.

LaPierre's documents and other evidence fail to support LaPierre's assertion that she actually notified Aetna in 1983. The documents that were offered into evidence tend to establish that Aetna instructed LaPierre to apply for Social Security, repeatedly requested information regarding the status of those applications and requested that she reapply after LaPierre apparently informed Aetna that Social Security had denied her application.[3] On July 25, 1990, Aetna sent a letter to LaPierre stating in part "[t]hank you for notifying us that the Social Security Administration has denied your application for disability benefits" and advising LaPierre to apply for a reconsideration of the denial of the award and to inform them of the results

of the reconsideration.[4] Despite these inquires, LaPierre failed to notify Aetna of the Social Security award until September of 1991.[5]

Even after Aetna learned in September of 1991 that LaPierre was receiving Social Security disability benefits, LaPierre failed to provide Aetna with information concerning the amount of the award or sign an authorization so Aetna could request the information directly from Social Security.[6] Aetna requested information from LaPierre about the Social Security award on numerous occasions including by correspondence of February 6, 1991, June 19, 1991, September 19, 1991, October 4, 1991, January 10, 1992, April 24, 1992 and February 17, 1993.[7] As a result of LaPierre's failure to respond, Aetna could only estimate the amount of the award when it initially calculated and billed her for the over-payment.[8]

LaPierre also takes the position that a principal-agency relationship existed between Aetna and Polaroid that would justify charging Aetna with constructive knowledge of anything Polaroid knew, including Polaroid's knowledge of her Social Security Award.

█ The cornerstone of an agency relationship is the power of the principal to control the conduct of his agent. *Courtney v. Remler,* 566 F.Supp. 1225 (D.S.C.1983), *aff'd without op.,* 745 F.2d 50 (4th Cir.1984). The mere fact that one contracting party is empowered to give general directions as to what is to be done, without control over the methods or means, does not alone create a principal-agent or master-servant relationship. *Chatman v. Johnny J. Jones Exposition, Inc.,* 212 S.C. 215, 47 S.E.2d 302 (1948).

According to the LTD Policy, Aetna was the Insurance Company, Polaroid was the Policy Holder and LaPierre was one of numerous Participant Employees. Aetna was solely responsible for the administration of the LTD Policy including providing each insured employee with the features of the coverage and determining the eligibility to re-

**3.** Plaintiff's Exhibits 1, 18, 12, 6 and 7.

**4.** Plaintiff's Exhibit 5.

**5.** Plaintiff's Exhibit 8.

**6.** Plaintiff's Exhibits 14, 8, 13, 5 and 10.

**7.** Plaintiff's Exhibits 6, 7, 14, 8, 13, 15 and Defendant's Exhibit A.

**8.** Plaintiff's Exhibit 15.

ceive benefits. If payments were allowed, they were made directly from Aetna to the Participant Employee. There was no evidence presented that the relationship between Polaroid and Aetna was anything beyond parties to a contract or that Polaroid controlled Aetna's administration of the LTD Policy. Therefore, even if Polaroid was aware that LaPierre was receiving Social Security benefits, Aetna cannot be charged with that knowledge as its agent. Furthermore, the underlying LTD Policy between Aetna and Polaroid, under which LaPierre claims benefits, expressly required that no contract provision could be waived except in writing by the parties.[9]

It is therefore the finding of this Court that Aetna did not waive its rights of recoupment as to the over-payment to LaPierre.

### iv. Damages

Aetna established its right to recoup the sum of $57,062.71 as of June 30, 1994, through the testimony of its witness, Aetna employee Kathryn Bullock, and its exhibits offered into evidence. Those exhibits are summarized and reconciled as follows:

I. **Monthly Rate of Basic Earnings:**[10]      **$1,109.33**

II. **Full benefit (before adjustments)** under the LTD Policy:

| | | |
|---|---|---|
| $144.21 | 6/25/82–6/30/82 | ($721.06/month [11]) |
| $38,937.24 | 7/1/82–12/31/86 | ($721.06/month) |
| $45,204.42 | 1/1/87–9/30/91 | ($793.06/month [12]) |
| | Total benefits paid | **$84,285.87** |
| 12% increase effective 1/1/91: | ($888.23/month [13]) | |

III. **Adjustments** to benefits for Social Security awards[14]

Personal Social Security disability award of Cecilia LaPierre: [15]      $477.10

Social Security award for 5 children/dependents in excess of 10% of monthly rate of basic earnings:

$215.00[16] − ($1109.33 × 10%) =      <u>$104.07</u>

**Total Adjustments per month**      $581.17

IV. **Monthly benefits net of adjustments** to which LaPierre was otherwise entitled (full benefit less adjustment of $581.17 per month):

| | | |
|---|---|---|
| $27.98 | 6/25/82–6/30/82 | (139.89/month × .2 months[17]) |
| $7,554.06 | 7/1/82–12/31/86 | (139.89/month × 54 months) |
| $12,077.73 | 1/1/87–9/30/91 | (211.89/month × 57 months[18]) |
| $5,721.03 | 10/1/91–12/31/93 | (211.89/month × 27 months) |
| <u>$1,842.36</u> | 1/1/94–6/30/94 | (307.06/month × 6 months[19]) |
| | Total benefits due: | **$27,223.16** |

V. **Over-payment through 6/30/94:**

| | |
|---|---|
| $84,285.87 | Total benefits paid |
| − <u>$27,223.16</u> | Total benefits due |

**OVER–PAYMENT TO BE RECOUPED FROM FUTURE PAYMENTS <u>$57,062.71</u>**

---

9. Plaintiff's Exhibit 19, (LTD Policy at p. 10, § 4).

10. Joint Pre–Trial Order, p. 1.

11. Joint Pre–Trial Order, p. 2.

12. Joint Pre–Trial Order p. 2.

13. Calculated based on 12% increase. Plaintiff's Exhibit 17.

14. The monthly benefit is reduced by the amount of the employee's disability payments under Social Security, and further reduced by Social Security payments to the employee's spouse, children, and dependents on account of the employee's disability in excess of 10% of the monthly rate of basic earnings. Joint Pre–Trial Order p. 1; Plaintiff's Exhibit 19 (LTD Policy, p. 6–B § 2(A); p. 6–C § 2(D)(2)(e) and § 2(E)(2).

15. Plaintiff's Exhibit 4.

16. Plaintiff's Exhibit 3.

17. 1982–1986: $721.06 − $581.17 = $139.89.

18. 1987–1993: $793.06 − $581.17 = $211.89.

19. 1994: $888.23 − $581.17 = $307.06.

The only evidence to refute Aetna's presentation of these amounts was the testimony of LaPierre that the Social Security Disability Award of $215 per month she received for her five (5) children should only partially be considered. LaPierre argues that the portion of the Social Security Award to which she was not legally entitled should not be considered when determining the amount Aetna is entitled to recoup. She testified that at the time of the award, she told Social Security that she had five (5) children, and they never asked if they were all biologically hers or if they were all minor dependents she was supporting. She testified that three (3) of the children were her husbands by a previous marriage and that those three (3) children in part lived with and were dependents of his ex-wife. However, LaPierre provided no specific amounts or dates on which to base her claim for reduction of the amounts sought by Aetna.

It appears to this Court that the LTD Policy provided for recoupment of all Social Security benefits including those to which "employee's spouse, children and dependents are entitled". LaPierre has failed to produce any credible evidence to allow the Court to reduce Aetna's entitlement to recoupment due to over-payments of Social Security benefits. The defendant should not be allowed to utilize an alleged improper payment by Social Security, allowed without correction by her over a period of several years, as a defense to the recoupment by Aetna of its over-payment. Therefore, based upon the evidence presented, it appears that the proper amount for recoupment by Aetna is Fifty Seven Thousand, Sixty–Two and 71/100 ($57,062.71) Dollars as of June 30, 1994.

## CONCLUSION

For the reasons stated within, it is therefore

ORDERED, that Aetna has proven by the preponderance of the evidence that it is entitled to recoup, the pre-petition over-payments from the post-petition payments it would otherwise have made to LaPierre arising from the LTD Policy in the amount of Fifty Seven Thousand, Sixty–Two and 71/100 ($57,062.71) Dollars as of June 30, 1994. This recoupment is not subject to the automatic stay provisions of 11 U.S.C. § 362 and was not a dischargeable debt pursuant to the provisions of 11 U.S.C. § 524 and 11 U.S.C. § 727.

AND IT IS SO ORDERED.